DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants, James and Anita Scelza, appeal the judgment of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellants filed a complaint for breach of contract against appellee, Joyce Mikhael, alleging that appellee had failed to close on a real estate transaction to purchase appellants' condominium. The parties filed competing motions for summary judgment. The trial court denied both motions for summary judgment. Appellants filed a motion for reconsideration, which the trial court denied. The matter then proceeded to bench trial before the judge. At the *Page 2 
conclusion of trial, the court entered judgment in favor of appellee and against appellants. Appellants timely appeal, setting forth one assignment of error for review.
 II. ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS JAMES AND ANITA SCELZA IN OVERRULING THEIR MOTION FOR SUMMARY JUDGMENT, THEN IN DENYING THEIR MOTION FOR RECONSIDERATION, AND THEREAFTER IN FAILING TO GRANT JUDGMENT TO THEM AFTER A BENCH TRIAL ON ESSENTIALLY THE SAME EVIDENCE."
 {¶ 3} Appellants argue that the trial court erred by denying their motion for summary judgment and motion for reconsideration and by ultimately entering judgment in favor of appellee after a bench trial. This Court disagrees.
 {¶ 4} For ease of review, this Court first addresses the trial court's judgment in favor of appellee after the bench trial. Appellants effectively argue that the trial court's judgment is against the weight of the evidence.
 {¶ 5} This Court has stated:
 "When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001), 141 Ohio App.3d 103, 115. `The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' (Alterations sic). Id., citing Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin *Page 3 
(1983), 20 Ohio App.3d 172, 175." In re P.B., 9th Dist. No. 23276, 2006-Ohio-5419, at 2006-Ohio-5419, at ¶ 15
 {¶ 6} Appellee offered to purchase appellants' condominium, and appellants accepted her offer. The contract contained a financing provision which stated:
 "This transaction is conditioned upon BUYER obtaining a commitment for a first mortgage loan (the "Loan") from a lending institution in the amount set forth in D(3) above, or in a lesser amount acceptable to BUYER. BUYER agrees to apply in writing for the Loan within five (5) Days, as defined in Paragraph P, after the date of Acceptance, to cooperate fully with the lender's requests for information and to use good faith efforts to obtain the Loan. If BUYER'S loan application is neither approved nor denied within 10 days after the date of Acceptance, then BUYER may either request a written extension or remove this contingency in writing.
 "If BUYER'S loan application is denied, or if SELLER refuses an extension and BUYER does not remove this contingency, then this agreement ("AGREEMENT") shall be null and void, neither BUYER, SELLER nor any REALTOR(S)® involved in this transaction shall have any further liability or obligation to each other, and both BUYER and SELLER agree to sign a mutual release, whereupon the earnest money shall be returned to BUYER."
 {¶ 7} The contract further mandated that all documents and funds necessary to complete the transaction be placed in escrow by the closing date of May 15, 2003.
 {¶ 8} There is no dispute in this case that appellee did not secure financing to purchase the property before the closing date. Prior to the commencement of trial, the trial court stated that it believed the only issue in the case was whether appellee acted in bad faith in failing to obtain financing. Appellants conceded that *Page 4 
"there's a rule of reasonableness that applies" so that appellee would not have been required to obtain financing no matter the cost. Appellants asserted that appellee breached the contract by misrepresenting her income and by failing to inquire into two final loan options. Appellants ultimately conceded that those issues go only to the issue of bad faith. In summation, the trial court stated that "the issue before the Court is whether or not the defendant was acting in good faith or if she's in breach of contract." Appellants' counsel concurred, stating, "Exactly."
 {¶ 9} The contract itself imposed a duty upon appellee to use good faith efforts to obtain a commitment for a first mortgage. Notwithstanding appellee's good faith efforts to obtain the loan, if appellee's loan application is denied, the contract would become null and void, relieving all parties of any further obligation.
 {¶ 10} This Court has addressed this precise issue, holding that "* * * buyers must show good faith. They cannot defeat the contract by their own fault. They must honestly determine what kind of a loan they need and must make a bona fide effort to obtain it." (Citation omitted.)Graham-Chrysler Plymouth, Inc. v. Warren (Aug. 15, 1979), 9th Dist. No. 9222. Accordingly, if the finding that appellee used good faith efforts to obtain a commitment for a loan on the terms she needed is not against the manifest weight of the evidence, this Court must affirm. *Page 5 
 {¶ 11} At trial, Anita Scelza testified that she was not aware that financing was a problem until immediately before the scheduled closing. She testified that appellee did not request an extension of time in which to secure financing.
 {¶ 12} James Scelza testified that he went to the realtor's office on May 14, 2003, to sign closing documents. He testified that he did not sign anything that day, because he was informed that there was "some sort of a money situation and a loan situation" which would prevent closing. He affirmed his wife's testimony that appellee never requested an extension of time in which to obtain financing. Mr. Scelza further testified that he knew that his attorney had sent a letter to the attorney then representing appellee, which letter stated that appellants "have terminated the agreement due to [appellee's] continuing breach after notice and demand to perform."
 {¶ 13} The Scelzas further testified as to the amount of their alleged damages.
 {¶ 14} Michele Lux, finance manager for Howard Hanna Mortgage Services, fka Home Mortgage Assured Corporation, testified that she was the loan originator for appellee's loan to purchase appellants' condominium. She testified that she took information from appellee to complete the loan application process. She testified that appellee reviewed the loan application for accuracy. Ms. Lux testified that appellee cooperated with her and provided all information requested, *Page 6 
as well as contact information for her accountant who might provide additional necessary information.
 {¶ 15} Ms. Lux testified that she made a loan commitment to appellee for a 3.75% 3/1 adjustable rate mortgage but that that loan was later denied because appellee's debt ratios were a problem. She testified that she then made a loan commitment to appellee for a 4% loan, which appellee accepted. She testified that appellee signed a financing agreement for the 4% loan on April 24, 2003, and that the agreement was not conditioned upon appellee's listing her other property or providing a K-1 for her Seety Limited Company investment income. Ms. Lux testified that she later called appellee to ask that her accountant send proof of that investment income. She confirmed that appellee referred her to the accountant.
 {¶ 16} Ms. Lux testified that she learned that a certain income producing vehicle had been liquidated and no longer existed. She testified that she did not inquire regarding any other sources of income which might correspond to the $ 4135.00 per month reported by appellee. Ms. Lux agreed that appellee had provided prior tax returns and that she obtained the $ 4135.00 figure from a tax return. In fact, she testified that appellee provided all documentation necessary to process her loan application.
 {¶ 17} Ms. Lux testified that she notified appellee the day before the scheduled closing to inform her that she no longer qualified for the 4% loan. She testified that she offered appellee a 4.75% ARM and a 5.625% fixed rate loan, but *Page 7 
that appellee did not accept those offers because her brother, a certified financial planner, had advised her that she could not afford payments on a loan with a greater than 4% interest rate. She testified that a good faith estimate, addendum, truth in lending disclosure, mortgage loan application, affiliated business arrangements documents, servicing disclosure, mortgage loan origination agreement and borrower certification authorization were all generated in regard to the earlier loan commitments. Ms. Lux conceded, however, that no such documents were generated for the proposed 4.75% and 5.625% loans. She further testified that any conditions for the 4.75% and 5.625% loan offers were undetermined because "it was never processed through. * * * That was never followed through with." In addition, Ms. Lux testified that the underwriter had not signed off on the last two loan offers, so that there was no final loan approval for either the 4.75% or 5.625% loan offer.
 {¶ 18} Ms. Lux admitted that appellee did not do anything during the loan application process which caused her not to be eligible for either the 3.75% or 4% loan. She further testified that the two later higher rate loan offers would have caused appellee to have a higher loan payment.
 {¶ 19} Appellee testified that she made her loan application to obtain financing for appellants' condominium with Michele Lux of Home Mortgage Assured Corporation. She testified that she provided Ms. Lux with the requested information and reviewed the application before signing it. *Page 8 
 {¶ 20} Appellee testified that she was offered a loan with a rate of 3.75% but that the rate was later raised to 4% due to debt ratio problems. She asserted that she believed that the 4% loan was locked in and that there were no conditions. Appellee testified that Ms. Lux called her just before closing to inform her that the 4% loan was no longer available to her. She testified that Ms. Lux told her that she thought she could get her a 5.65% loan. Appellee denied the allegation that Ms. Lux told her she no longer qualified for the 4% loan because her income assertions had turned out not to be true.
 {¶ 21} Appellee testified that Ms. Lux wanted more information at one point and that she called appellee's accountant to obtain it. She testified that Ms. Lux never asked her for a K-1 for the Seety Limited Company. She testified that she did not think that there was any problem, because Ms. Lux did not call her to tell her that she could not verify her $ 4135.00 monthly investment income. Appellee testified that she continued to receive monthly income in that amount even at the time of the trial.
 {¶ 22} Appellee testified that she understood her contract to purchase appellants' condominium to be conditioned upon her obtaining financing. She testified that she cooperated fully during the loan application process and used good faith efforts to obtain a loan she could afford. Appellee testified, however, that she relied on her brother's advice as a certified financial planner that she could not afford to repay a loan with greater than 4% interest. Appellee testified *Page 9 
that, at the time scheduled for closing, she believed that she had no loan commitment and no financing available to her, because no loan documents had been produced and Ms. Lux told her only that she thought she could get appellee approved for a 5.625% loan.
 {¶ 23} Based on the evidence adduced at trial, this Court finds that the trial court's finding that appellee used good faith efforts to obtain a loan commitment to finance the purchase of appellants' condominium, but that earlier loan commitments had been rescinded, was not against the weight of the evidence. Appellants could not testify as to any actions by appellee that showed her lack of cooperation and good faith. Ms. Lux testified that appellee provided all requested information and did nothing to negate her eligibility for the 3.75% and 4% loans. Ms. Lux admitted that those first two loans had technically been denied. Ms. Lux further testified that no paperwork was generated on the 4.75% and 5.625% loan proposals and that the underwriters had not approved them. Accordingly, appellee had no loan commitment as of the date scheduled for closing. Rather, there were two unrefined loan offers before appellee which she could not in good faith accept because she reasonably believed that she could not afford to repay the higher interest loans. In reaching that determination, appellee relied on the advice of her brother, a certified financial planner with knowledge of her financial situation. Under these circumstances, the weight of the evidence supports the finding that appellee used good faith efforts to obtain the loan. Because she had not obtained a *Page 10 
loan commitment as required by the contract through no bad faith on her part, the trial court's finding that appellee did not breach the parties' contract is not against the manifest weight of the evidence. Accordingly, the trial court did not err by granting judgment after the bench trial in favor of appellee and against appellants.
 {¶ 24} Appellants also argue that the trial court erred by denying their motion for summary judgment and motion to reconsider the denial. This Court disagrees.
 {¶ 25} The Ohio Supreme Court has held that
 "any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d 150, 156.
 {¶ 26} The Supreme Court added:
 "We need not evaluate the evidentiary materials supporting and opposing the [party's] summary judgment motion on [the] issue. Any error in denying that motion is moot or harmless, even if it had merit when the court denied it. * * * We are also persuaded by the fact that courts throughout this country generally hold that the denial of a motion for summary judgment is not a point of consideration in an appeal from a final judgment entered following a trial on the merits. See, generally, Annotation, Reviewability of Order Denying Motion for Summary Judgment (1967), 15 A.L.R.3d 899, 922-925, and 1994 Supplement at 72-76." Id. See, also, Bies v. Huntington Natl. Bank, 9th Dist. No. 22660, 2005-Ohio-6981, at ¶ 11.
 {¶ 27} This Court, without determining whether the trial court committed any error in denying appellants' motion for summary judgment, need only *Page 11 
determine whether the issues raised at trial were the same issues raised in the motion for summary judgment. We find that they are.
 {¶ 28} In their motion for summary judgment, appellants argued that appellee breached her duty to perform her agreement according to its terms, i.e. to use good faith efforts to obtain a loan commitment. Although appellants attempt to distinguish between appellee's alleged breach of her duty to use good faith and her general duty to perform her agreement according to its terms, there was never any dispute that appellee failed to obtain a loan commitment prior to closing. The only issue for consideration was whether appellee failed to obtain a loan commitment because of any bad faith on her part through lack of cooperation or misrepresentation. Accordingly, the issues raised at both the trial and in appellants' motion for summary judgment are the same. Therefore, this Court need not review the propriety of the trial court's order denying appellants' motion for summary judgment.
 {¶ 29} The same reasoning dictates that we need not review the propriety of the trial court's order addressing appellants' motion for reconsideration of the denial of the motion for summary judgment. Any error, if such exists, is rendered moot or harmless after a subsequent trial on the same issues.[1] Appellants' *Page 12 
assignment of error is overruled.
 III. {¶ 30} Appellants' sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellants.
[1] This is not the situation addressed by appellee in her brief, where she properly asserts that a motion to reconsider a final judgment is a nullity; because the trial court's order denying the competing motions for summary judgment was not a final judgment. *Page 1