OPINION
{¶ 1} Plaintiff-appellant, Philip C. Johnston, appeals from a judgment of the Franklin County Court of Common Pleas that granted summary judgment to defendants-appellees, Daniel and Stefanie Cochran and Sherlock Homes Inc. Realtors ("Sherlock"). For the following reasons, we affirm in part, reverse in part, and remand.
 {¶ 2} On March 7, 2003, the Cochrans made a written offer to purchase Johnston's Upper Arlington house for $360,000. Johnston accepted the offer the next *Page 2 
day. Upon Johnston's acceptance, the Cochrans deposited $1,000 in earnest money with their realtor, Sherlock.
 {¶ 3} The real estate contract that the Cochrans and Johnston entered into provided that the deal was "contingent upon financing" and stated that "Buyer is prequalified through Platinum Mortgage." The Cochrans based this latter statement upon a "Letter of Pre Approval" that they received from Platinum Mortgage Services ("Platinum") that read:
 Based on the information [Daniel Cochran] provided, he qualifies for financing in the amount of $365,000 at a market rate interest for a thirty-year term. This approval is contingent upon * * * verification of all information provided by the applicants.
 {¶ 4} After Johnston accepted their offer, the Cochrans submitted to Platinum further financial information and documentation to secure a mortgage on the house. In early May, Daniel Cochran discovered that he and his wife qualified for a conventional mortgage loan of only $310,000 — $50,000 less than the purchase price of the house. Cochran immediately met with Nathan Orms, the owner of Platinum, to discuss the availability of additional financing. During that meeting, Cochran explained that he planned to make a down payment of approximately $16,000 to $18,000. Cochran asked Orms if Platinum would approve him for a loan of approximately $342,000 to $344,000, which was the difference between the proposed down payment and the purchase price of the house. Orms declined.
 {¶ 5} On May 14, 2003, the Cochrans received a letter from Orms in which Platinum formally rejected the Cochrans' application for financing of $360,000, but reiterated the offer of a $310,000 loan. Upon receipt of the letter, Daniel Cochran telephoned Karen Schneider, his Sherlock-affiliated real estate agent, and told her that he *Page 3 
was unable to obtain sufficient financing to purchase the house. Schneider then contacted Kristen Lewis, Johnston's real estate agent, explained the Cochrans' lack of sufficient financing, and stated that the failure of the financing contingency voided the contract.
 {¶ 6} The Cochrans' repudiation of the contract surprised Johnston. In prior conversations between Schneider and Lewis, Schneider had represented that the Cochrans had satisfied the financing contingency.[1]Dismayed with the Cochrans' apparent about-face, Johnston refused to sign the mutual release that Schneider had drafted and submitted to Johnston's agent. He alone attended the May 28, 2003 closing. Johnston eventually sold his house to a third party for $25,000 less than the $360,000 the Cochrans agreed to pay for it.
 {¶ 7} On September 27, 2004, Johnston filed suit against the Cochrans and Sherlock. Johnston asserted claims for breach of contract and promissory estoppel against the Cochrans, and claims for breach of contract and breach of fiduciary duty against Sherlock. Later, Johnston amended his complaint to add a claim for negligent misrepresentation against Sherlock.
 {¶ 8} Each party filed a motion for summary judgment. On September 15, 2006, the trial court granted the Cochrans' and Sherlock's motions and denied Johnston's motion. The trial court then issued a final judgment entry in which it granted judgment in favor of the Cochrans and Sherlock. Johnston now appeals from that final judgment entry.
 {¶ 9} On appeal, Johnston assigns the following errors: *Page 4 
 [1.] The trial court erred in granting summary judgment to Defendants/Appellees Daniel and Stefanie Cochran because genuine issues of material fact exist concerning whether a condition precedent to a real estate contract was sufficiently satisfied, and thus, whether the Cochrans breached the real estate contract.
 [2.] The trial court erred in granting summary judgment to Defendant/Appellee Sherlock Homes Inc. Realtors because genuine issues of material fact exist as to whether the underlying contract with the Cochrans was excused; whether Sherlock Homes was a fiduciary of Appellant for purposes of a deposit to which he was entitled; and as to its negligent misrepresentations as to whether the Cochrans' financing contingency provision was met and the financial ability and down payment intention of the Cochrans at closing.
 {¶ 10} Appellate review of summary judgment motions is de novo.Helton v. Scioto Cty. Bd. Of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. RelationsBd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 11} By his first assignment of error, Johnston argues that the trial court erred in granting summary judgment to the Cochrans when genuine issues of material fact remain regarding the satisfaction of the financing contingency. We agree.
 {¶ 12} Generally, financing contingencies are conditions precedent.Wrase v. Ardis (Jan. 17, 1992), Lucas App. No. L 90-335. A condition precedent is an act or event that must occur before the contractual obligation to perform will become effective. Ballard *Page 5 v. Cleveland, Franklin App. No. 02AP-485, 2002-Ohio-7202, at ¶ 21;Moody v. Ohio Rehab. Services Comm., Franklin App. No. 02AP-596, 2002-Ohio-6965, at ¶ 9. If a condition precedent is not fulfilled, the parties are excused from performing under the contract. Id.
 {¶ 13} When one of the parties to a contract has direct influence over the fulfillment of a condition precedent, that party bears "the burden to show that it made good faith efforts to satisfy [the] contractual conditions which allegedly excuse its performance." Kebe v. Nutro Mach.Corp. (1985), 30 Ohio App.3d 175, 178. See, also, McCabe/Marra Co. v.City of Dover (1995), 100 Ohio App.3d 139, 155-156 (citing and applyingKebe). In other words, a party cannot take advantage of an unfulfilled condition precedent to excuse its performance without first proving that it exercised good faith and diligence in trying to satisfy the condition. GEM Dev. v. Pepsi-Cola Bottling Co., Richland App. No. 06CA68, 2007-Ohio-3010, at ¶ 33; Cutler Assoc, Inc. v. DeAngelo (Mar. 14, 2001), Summit App. No. 20163; Serand Corp. v. Owning the Realty,Inc. (Nov. 1, 1995), Hamilton App. No. C-941010; Fortune v. Fortune (May 3, 1991), Greene App. No. 90-CA-96. If the condition precedent is a financing contingency, a purchaser must establish that it "honestly determine[d] what kind of a loan [it] need[ed] and [made] a bona fide effort to obtain it." Scelza v. Mikhael, Summit App. No. 22994,2007-Ohio-2199, at ¶ 10. See, also, Nieman v. Williams (May 30, 1989), Franklin App. No. 88AP-689 ("[W]hen a real estate contract is contingent upon the purchaser's ability to obtain financing, the purchaser must act in good faith and must make reasonable efforts to obtain financing in order to avoid liability on the purchase agreement.").
 {¶ 14} In the case at bar, Daniel Cochran testified in his deposition that he had approximately $16,000 to $18,000 to contribute to a down payment, so he and his wife *Page 6 
required a loan of at least $342,000 to $344,000 to purchase the house. Johnston, however, asserts that Daniel Cochran's testimony does not reflect an honest evaluation of the Cochrans' financing need. In support of this assertion, Johnston points to his testimony that, prior to May 14, 2003, Schneider told Lewis that the Cochrans had obtained the financing necessary to satisfy the contingency. Johnston infers from this statement that the Cochrans' true financing need was $310,000 — the amount of the loan Platinum approved. However, both Cochrans denied ever telling Schneider that they received sufficient financing. Thus, at best, Schneider's representation proves that Schneider believed a $310,000 loan would sufficiently finance the Cochrans' purchase of the house. It is not evidence of the Cochrans' own assessment of their ability to purchase Johnston's house, much less evidence that the Cochrans lacked good faith in determining the amount of financing they required.
 {¶ 15} Likewise, evidence that the Cochrans did not use the $65,000 they had in home equity to facilitate the purchase of Johnston's house does not prove that they were dishonest in evaluating their financing need. According to Daniel Cochran's testimony, the Cochrans would have added the net profits from the sale of their house to a down payment in order to salvage the deal. Unfortunately, the Cochrans' house, which was on the market throughout the spring of 2003, did not sell. In any event, good faith only required the Cochrans to fairly assess their financing need, not to liquidate or borrow against every asset in order to limit their need to the lowest possible amount. Therefore, we conclude that the Cochrans established that they honestly determined the kind of loan they needed, thus satisfying in part their obligation to make a good faith effort to fulfill the condition precedent. *Page 7 
 {¶ 16} We next address the second part of the Cochrans' good faith burden; i.e., their responsibility to show that they made reasonable efforts to obtain financing. In the two and one-half months between the execution of the real estate contract and the closing, the Cochrans only sought financing through one mortgage broker, Platinum. "[A] single application for a loan to finance a home purchase can constitute a reasonable effort." Wrase, supra. Here, however, we find that a fact finder must determine whether the Cochrans' single attempt to achieve financing sufficed. Daniel Cochran knew in early May that Platinum would only extend financing "in [the] neighborhood" of $310,000, but he did not approach any other lender (including his own bank) or pursue alternative financing options. In fact, Cochran did nothing until he received official notice of Platinum's $310,000 loan offer on May 14, 2003, at which point he instigated the "shutdown process" instead of seeking other financing or asking for an extension of the closing date. Given the Cochrans' behavior after they discovered Platinum would not approve a loan over $310,000, we conclude that a genuine issue of material fact remains as to whether they put forth reasonable efforts to secure financing.
 {¶ 17} In reaching this conclusion, we reject the Cochrans' argument that this court should conclude as a matter of law that they acted reasonably under the circumstances. In making this argument, the Cochrans rely upon Daniel Cochran's affidavit testimony that, "I anticipated financing in the amount of $360,000 until being informed otherwise on or about May 14, 2003." Based upon this testimony, the Cochrans maintain that they only had two weeks before the closing to obtain other financing, which was too little time for them to do anything.
 {¶ 18} Because the Cochrans' argument is based upon affidavit testimony that contradicts earlier deposition testimony, it must fail.Byrd v. Smith, 110 Ohio St.3d 24, *Page 8 2006-Ohio-3455, at ¶ 22 ("[A] moving party's contradictory affidavit may not be used to obtain summary judgment. * * * In other words, a summary judgment movant may not benefit from changing a deposition with a later sworn statement."). In Daniel Cochran's deposition, he testified that he discovered that Platinum would not be approving a $365,000 loan in early May. He met with Orms "a couple of weeks" before receiving the May 14, 2003 letter, and left that meeting with the understanding that Platinum would only offer "in [the] neighborhood" of $310,000. Thus, Cochran's deposition testimony establishes that the Cochrans had four — not two — weeks in which to seek other financing. We find this window of opportunity to be ample enough to create a genuine issue of material fact regarding the reasonableness of the Cochrans' efforts.
 {¶ 19} Accordingly, because a question of fact exists as to whether the Cochrans made reasonable efforts to secure financing, we sustain Johnston's first assignment of error.
 {¶ 20} By Johnston's second assignment of error, he argues that the trial court erred in granting summary judgment to Sherlock on his claims for breach of contract, breach of fiduciary duty, and negligent misrepresentation.
 {¶ 21} Johnston's first two claims against Sherlock — for breach of contract and breach of fiduciary duty — relate to the $1,000 in earnest money that the Cochrans deposited with Sherlock. Johnston claims that he is entitled to that money pursuant to the tenth clause of the real estate contract, which reads:
 Deposit: Buyer has deposited with Broker the sum receipted for below * * * Upon acceptance of this contract by both parties, Broker shall deposit such amount in its trust account to be disbursed * * * as follows: * * * (b) if Seller fails or refuses to perform, or any contingency is not satisfied or waived, the deposit shall be returned; (c) if Buyer fails or refuses to perform, this deposit shall be paid to the Seller. *Page 9 
 {¶ 22} Contractual privity "`goes to the very heart of actionable breach'" and, consequently, is essential to a claim for breach of contract. DVCC, Inc. v. Medical College, Franklin App. No. 05AP-237,2006-Ohio-945, at ¶ 55, quoting Mark-it Place Foods, Inc. v. New PlanExcel Realty Trust, 156 Ohio App.3d 65, 2004-Ohio-411, at ¶ 22. See, also, Kirby v. Cole, 163 Ohio App.3d 297, 2005-Ohio-4753, at ¶ 11
("[O]nly a party to a contract or an intended third-party beneficiary thereof may be named as a defendant in an action for breach of a contract."). As parties to the real estate contract, the Cochrans and Johnston were bound together in a contractual relationship; Sherlock, however, was not a party to the contract and shared no relationship with either the Cochrans or Johnston by virtue of the contract. Therefore, Sherlock cannot be liable for breach of the contract and the trial court properly granted summary judgment on that claim.
 {¶ 23} While Sherlock may not be a privy to the real estate contract, it is a fiduciary to both the Cochrans and Johnston. Richard T. KikoAgency, Inc. v. Ohio Dept. of Commerce, Div. of Real Estate (1990),48 Ohio St.3d 74, 76-77 (a broker who maintains funds given to him pending the sale of real estate "is in a fiduciary relationship with all parties and has an obligation of good faith and fair dealing"). As a fiduciary, Sherlock must disburse the earnest money pursuant to the terms that the parties agreed to when they entrusted the money to Sherlock. Pursuant to those terms, Sherlock must return the deposit to the Cochrans if the financing contingency failed. Thus, if the Cochrans exercised good faith in attempting to secure financing, then their lack of success resulted in the failure of the contingency and they are entitled to the earnest money. On the other hand, if the Cochrans did not exercise good faith, then they refused to perform the real estate contract and Johnston is entitled to the earnest money. Therefore, we conclude that a genuine issue of material fact exists as to whether or not Sherlock has breached its *Page 10 
fiduciary duty by withholding the earnest money from Johnston. Consequently, the trial court erred in granting summary judgment on that claim.
 {¶ 24} We next turn to Johnston's claim for negligent misrepresentation. "`One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" Delman v. City of Cleveland Heights (1989),41 Ohio St.3d 1, 4 (emphasis omitted), quoting 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1).
 {¶ 25} Here, Johnston claims that Schneider made various false statements to his realtor; namely, that the Cochrans planned on making a 20 percent down payment and that the Cochrans had satisfied the financing contingency. The record, however, does not contain any evidence demonstrating how Johnston relied upon those statements to his detriment. Johnston did not remove his house from the market upon receiving the allegedly false information, nor did he reject any other offer to purchase the house because he believed that information. When asked to identify his damages in his deposition, Johnston referred solely to the $25,000 loss he suffered when he sold his house to a third party for less money than the Cochrans offered. However, that loss stemmed from the Cochrans' repudiation of the real estate contract, not Johnston's reliance upon statements Schneider made during the time period before the repudiation. Therefore, we conclude that the trial court properly granted Sherlock summary judgment on Johnston's negligent misrepresentation claim. *Page 11 
 {¶ 26} Accordingly, we sustain Johnston's second assignment of error as it relates to his claim for breach of fiduciary duty, but overrule that assignment of error as it relates to his claims for breach of contract and negligent misrepresentation.
 {¶ 27} For the foregoing reasons, we sustain Johnston's first assignment of error, and sustain in part and overrule in part Johnston's second assignment of error. Thus, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and we remand this case to that court for further proceedings consistent with law and this opinion.
Judgment affirmed in part and reversed in part; and causeremanded.
SADLER, P.J., and FRENCH, J., concur.
[1] We recognize that Schneider disputes this fact. However, as this appeal challenges the propriety of a summary judgment entered against Johnston, we must construe the evidence most strongly in his favor.Yates v. Mansfield Bd. of Edn., 102 Ohio St.3d 205, 2004-Ohio-2491, at ¶ 1. *Page 1