[Cite as *Weckel v. Cole + Russell Architects*, 2017-Ohio-7491.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| FREDERIC C. WECKEL, | : | APPEAL NO. C-160591 |
| | | TRIAL NO. A-0407805 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| COLE + RUSSELL ARCHITECTS, | : | |
| | | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: Setember 8, 2017

*Tobias, Torchia & Simon* and *David Torchia*, for Plaintiff-Appellant,

*Keating Muething & Klekamp PLL* and *Kasey L. Bond*, for Defendant-Appellee.

**MOCK, Presiding Judge.**

{¶1}     Plaintiff-appellant Frederic C. Weckel appeals the decision of the Hamilton County Court of Common Pleas denying his motion to enforce a settlement agreement between him and defendant-appellee Cole + Russell Architects ("Cole + Russell").  We find no merit in Weckel's sole assignment of error, and we affirm the trial court's judgment.

### I.   Facts and Procedure

### A.   A Settlement Agreement

{¶2}     The record shows that Weckel had been a managing principal of Cole + Russell, a national architectural practice located in Cincinnati.  In March 2004, Cole + Russell terminated Weckel's employment.  Weckel brought suit against his former employer for breach of fiduciary duty and wrongful termination.  In January 2008, the parties entered into a settlement agreement.

{¶3}     Under the terms of that agreement, Weckel was to sell his shares of Cole + Russell stock to the firm's employee stock ownership plan ("ESOP"), rather than redeeming them as provided for in the shareholder agreement.  In exchange, Weckel agreed to end his lawsuit against Cole + Russell.

{¶4}     The agreement further provided:   "The ESOP purchase of Weckel's stock is contingent on the professional opinion of an independent adviser who must approve the ESOP's purchase of Weckel's shares."  The purpose of this provision was to protect the ESOP trustee.  The trustee was David Arends, who was also the president and chief executive officer of Cole + Russell.  An independent adviser was necessary because of the potential of a conflict of interest, although the parties did not anticipate any problems obtaining approval.

2

### B. Potts Appointed Independent Advisor

{¶5}    Cole + Russell hired Thomas Potts to serve as the independent advisor.  Potts then retained attorney Ben Wells to advise him in his role as independent fiduciary.  Arends had previously hired Wells to represent him in his capacity as the ESOP trustee.  Potts also hired ComStock Valuation Advisers ("ComStock") to review the sale of Weckel's stock to the ESOP and to determine the value of that stock.  Cole + Russell cooperated with Potts and ComStock and provided requested documents and information.

{¶6}    ComStock sent Potts a "draft fairness opinion" in which it determined that the "consideration to be paid by the ESOP" for Weckel's shares of stock was appropriate and that the transaction was "fair and reasonable to the ESOP from a financial point of view."  The transaction appeared to be moving forward and the parties exchanged various drafts and revisions of the settlement agreement.  Potts stated that most of his work was completed as of late April 2008.

### C. Cole + Russell Learns About Licensing Issues Related to the ESOP

{¶7}    On April 17, 2008, Arends and Joe Stephens, Cole + Russell's chief financial officer, attended a conference about ESOPs.  They were surprised to learn that having an ESOP violated the licensing requirements for architects in some states.  Neither of them had been on the board of directors at the time the ESOP was implemented.  At that time, the board had only determined that the ESOP would not violate Ohio law.

{¶8}    Wells, who was the attorney for Cole + Russell's ESOP, researched the licensing issue.  His research confirmed that the ESOP presented licensing issues in some states for two reasons.  First, several states did not permit an architectural firm

to be a general business corporation (as opposed to a professional corporation), and Cole + Russell needed to be a general corporation to have an ESOP. Second, several states required that a certain percentage of the shares of an architectural firm must have been held by a licensed architect, and Cole + Russell's ESOP held 40 percent of its shares. Arends testified that as a result of the information he learned at the conference, he became "a huge opponent" of ESOPs.

{¶9} Nevertheless, Cole + Russell continued its efforts to finalize the settlement agreement with Weckel. The parties continued to exchange drafts of the formal settlement agreement and the stock-purchase agreement. On May 7, 2008, Cole + Russell transferred $50,000 into the ESOP, which was the first of several transfers to ensure that the ESOP had enough money to purchase Weckel's shares.

{¶10} On May 28, 2008, Cole + Russell's board of directors had a special meeting to address "urgent" issues. One concern was that when the ESOP purchased Weckel's shares, the ESOP would own 51 percent of the company. The board passed a resolution to "investigate keeping the ESOP in a minority position with respect to direct ownership." At the meeting, the board noted that Weckel would "probably object and reopen the claim against the company." Subsequently, Stephens sent an email to Wells about keeping the ESOP in a "minority ownership interest."

{¶11} Potts had several telephone calls with Wells regarding the licensing issue. On July 15, 2008, Potts had a conference call with Wells and an unknown representative of Cole + Russell. Following the call, Potts did not think it would be in the best interests of the ESOP participants to buy additional shares at that time. He concluded that enough research existed to create doubt about the company's ability to work in some states.

{¶12} Potts understood that approximately 15 to 20 percent of Cole + Russell's revenue came from states where licensing issues existed. As a result, Potts believed that the Department of Labor would have regarded the proposed transaction as prohibited because it would jeopardize the company's revenue stream.

### D. Potts Does Not Approve of the Transaction

{¶13} On July 16, 2008, Potts wrote a letter to Cole + Russell's board of directors. He stated that the ESOP's purchase of Weckel's shares "may present obstacles to the Company's ability to do business in several states, including ones from which it obtains significant revenues." He also stated:

> I understand that the Company is exploring alternatives to resolve these issues. However, given the current state of uncertainty, and the importance to the Company of its ability to operate on a regional and national basis, it does not appear to be prudent at this time for the ESOP to increase its ownership of the Company beyond its current level of 40%. Therefore, until the licensure issues can be satisfactorily resolved, I have determined, in my capacity as special fiduciary for the ESOP, that the ESOP will not be able to consummate the purchase of shares owned by Fred Weckel.
>
> However, if the Company is able to satisfactorily resolve these licensure issues, my determination regarding the ability of the ESOP to purchase additional shares of the Company could change.

{¶14} Cole + Russell provided Weckel with a copy of Potts's letter. It informed Weckel that as a result of Potts's opinion, a material condition precedent to

the settlement agreement had not been satisfied. Therefore, it considered the agreement to be "null and void."

### E. The Licensing Issues Remained Unresolved for Several Years

{¶15} Weckel made several requests to meet with representatives of Cole + Russell, but his attempts were fruitless. He also suggested several alternatives to resolve Cole + Russell's ownership issues and allow the settlement agreement to go forward, which the company found to be unworkable for various reasons.

{¶16} Arends testified that Potts's letter was a "huge disappointment" because the company wanted the settlement to go forward. Nevertheless, Cole + Russell did not take any action to resolve the licensing issues for several years. It did continue to explore the available options to resolve the licensing issues in a way that would not unduly harm the company. Wells sent a memo to Arends and Stephens summarizing the options. One of the considerations was how each option would impact the settlement agreement. Wells considered it an advantage if the option would "facilitate the agreement" and a disadvantage if it would not.

{¶17} Cole + Russell ultimately decided that its best option to resolve the licensing issues was to terminate the ESOP. It did not immediately implement that option due to the uncertainty of the pending litigation with Weckel and cash-flow issues due to an economic downturn. Eventually, through a multi-step process, Cole + Russell merged the ESOP into the company's 401k plan, at substantial cost to the company. It then had a single shareholder, which resolved its licensing issues.

### F. Weckel Attempts to Enforce the Settlement Agreement

{¶18} In November 2008, Weckel moved to reopen discovery to depose Potts and to explore the basis for his opinion. The trial court denied that motion. In

February 2009, Weckel filed a motion to enforce the settlement agreement. Cole + Russell opposed the motion and reinstated a summary-judgment motion that it had previously filed and had held in abeyance since late 2007. The trial court denied Weckel's motion to enforce the agreement and granted summary judgment to Cole + Russell on Weckel's breach-of-fiduciary-duty claim.

{¶19}  Weckel's claim for wrongful termination was tried to a jury. The jury returned a verdict in favor of Cole + Russell. Weckel filed a motion for a new trial in which he claimed that the verdict was against the manifest weight of the evidence. The trial court overruled the motion.

{¶20}  Weckel appealed that judgment to this court. We affirmed that part of the trial court's judgment denying his motion for a new trial. But we reversed the trial court's decision in part, holding that the trial court abused its discretion when it refused to permit Weckel to reopen discovery to determine whether Potts's opinion was independent or whether it had been influenced by Cole + Russell as a pretext to terminate the settlement agreement. We also vacated that part of the trial court's decision denying Weckel's motion to enforce the settlement agreement, solely on the grounds that the failure to reopen discovery denied Weckel the ability to present evidence of bad faith by Cole + Russell. *See Weckel v. Cole + Russell Architects*, 2013-Ohio-2718, 994 N.E.2d 885, ¶ 5 (1st Dist.).

{¶21}  On remand, the trial court permitted Weckel to conduct discovery and held an evidentiary hearing on his motion to enforce the settlement agreement. It found:

> [Cole + Russell] has proved beyond any doubt that the independent
> fiduciary came to his conclusion independently and not in collusion
> with [Cole + Russell].  There is no evidence the decision of the

7

independent fiduciary was the result of an intent to injure or harm [Weckel]. The approval of Mr. Potts was a necessary condition precedent for the settlement to move forward. Without it, the settlement was null and void.

Consequently, the court denied Weckel's motion to enforce the settlement. This appeal followed.

{¶22} In his sole assignment of error, Weckel contends that the trial court erred in failing to enforce the 2008 settlement agreement. He argues that the alleged failure of the condition precedent was due to issues within Cole + Russel's exclusive control, that it did not act in good faith, and that the reason for the alleged failure of the condition precedent was pretextual. This assignment of error is not well taken.

## II. Settlement Agreements Generally/Standard of Review

{¶23} Settlement agreements are highly favored by the law. *State ex rel. Wright v. Weyandt* 50 Ohio St.2d 194, 197, 363 N.E.2d 1387 (1977); *MJMT, Inc. v. Geier*, 1st Dist. Hamilton No. C-110378, 2012-Ohio-813, ¶ 9. They are binding contracts that courts will enforce. *Cembex Care Solutions, LLC v. Gockerman*, 1st Dist. Hamilton No. C-150623, 2006-Ohio-3173, ¶ 6-7.

{¶24} The standard of review to be applied to a ruling on a motion to enforce a settlement agreement depends primarily on the nature of the question presented. If the dispute under review is a question of law, such as the interpretation of the contract or a determination of the sufficiency of the evidence to support a judgment, an appellate court must review the decision de novo to determine whether the trial court's decision to enforce the settlement agreement was based on an erroneous standard or a misconstruction of the law. *Continental W. Condominium Unit*

*Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996); *Lehigh Gas-Ohio, LLC v. Cincy Oil Queen City, LLC,* 1st Dist. Hamilton No. C-130127, 2014-Ohio-2799, ¶ 43; *Cembex Care Solutions* at ¶ 8.

{¶25} But where, as here, factual issues exist, we must determine if the trial court's judgment is against the manifest weight of the evidence. When addressing a challenge to the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, weigh the credibility of the witnesses, and determine whether the finder of fact lost its way and created such a manifest miscarriage of justice that we must reverse the judgment and order a new trial. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20; *In re Nauth*, 9th Dist. Medina No. 15CA0025-M, 2016-Ohio-5089, ¶ 7; *LeHigh Gas-Ohio* at ¶ 44. In weighing the evidence, we must assume that the findings of the trier of fact are correct, and if the evidence is susceptible of more than one construction, we must give it the interpretation consistent with the finding or verdict. *Lehigh Gas-Ohio* at ¶ 44.

### III. Condition Precedent

{¶26} A condition precedent is an act or event that must occur before the agreement can become effective. *Johnston v. Cochran*, 10th Dist. Franklin No. 06AP-1065, 2007-Ohio-4408, ¶ 12; *Serand Corp. v. Owning the Realty, Inc.*, 1st Dist. Hamilton No. C-941010, 1995 WL 653846, *3 (Nov. 1, 1995). If a condition precedent is not fulfilled, the parties are excused from performing under the contract. *Johnston* at ¶ 12; *Hamilton Cty. Bd. of Commrs. v. Arena Mgt. Holdings, LLC*, 1st Dist. Hamilton No. C-030339, 2004-Ohio-247, ¶ 20.

{¶27} When one of the parties to a contract has direct influence over the fulfillment of a condition precedent, that party bears the burden to show that it made good faith efforts to satisfy the conditions that allegedly excuse its performance. *Johnston* at ¶ 13; *Weckel*, 2013-Ohio-2718, 994 N.E.2d 885, at ¶ 21. A party cannot take advantage of an unfulfilled condition precedent to excuse its performance without first proving that it exercised good faith and diligence in trying to satisfy the condition. *Johnston* at ¶ 13.

{¶28} The settlement agreement provided that the ESOP's purchase of Weckel's stock was "contingent upon the professional opinion of an independent advisor who must approve the ESOP's purchase of Weckel's shares." Potts was appointed the advisor, and after considering a substantial amount of information, he did not approve the transaction. Potts owed a fiduciary duty to the ESOP participants, not to the company or to Weckel. He had no involvement with the settlement other than to fulfill his obligation to determine whether it was in the best interest of the ESOP participants to purchase the shares. He determined that it was not in their best interest based on the licensing problems in several states because of the ESOPs ownership of over 40 percent the company's shares. Thus, the evidence showed that the conditional precedent was not fulfilled.

{¶29} As we stated in our previous opinion, the only issue before the court was whether Potts's opinion was independent or whether it had been influenced by Cole +Russell as a pretext to terminate the settlement. *Weckel* at ¶ 30. Cole + Russel submitted evidence that his opinion was independent and not pretextual. Several witnesses testified that the company wanted the settlement to be final and to have the deal go forward. It made sure that the ESOP was sufficiently funded to buy Weckel's stock.

{¶30} The issues regarding the ESOP's ownership share in the company came as a surprise, and the company sought to learn more about it. The issue was thoroughly researched, and the company supplied the information to Potts. Though Potts did rely on that information, the record also shows that he conducted his own analysis based on his many years in the industry. As the trial court stated, while Weckel presented evidence that Potts's methodology was flawed, Cole + Russell's expert testified otherwise. Further, even if his methodology was flawed, it would not necessarily mean that his opinion was not independent or that it was pretextual. Therefore, we cannot hold that the trial court's determination that Potts's decision was independent and not a pretext to terminate the settlement agreement was against the manifest weight of the evidence.

### IV. Good Faith

{¶31} Weckel also argues that Cole + Russell did not act in good faith. Settlement agreements, like all contracts, contain an implied duty of good faith and fair dealing. *Weckel*, 2013-Ohio-2718, 994 N.E.2d 885, at ¶ 21. That duty implies "honesty and reasonableness in enforcement of a contract" and "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Stephen Business Ent., Inc. v. Lamar Outdoor Advertising Co.*, 1st Dist. Hamilton No. C-070373, 2008-Ohio-954, ¶ 19. But the duty does not mean that a party is not entitled to enforce the contract or that it must put the other party's interests above its own. *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433, 443, 662 N.E.2d 1074 (1996); *Wells Fargo Bank, N.A. v. U.S. Bank Natl. Assn.*, 1st Dist. Hamilton Nos. C-110209 and C-110215, 2011-Ohio-6555, ¶ 15. It also does not create

rights and duties not otherwise provided for in the contract. *Andrews v. Nationwide Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 97891, 2012-Ohio-4935, ¶ 27.

{¶32}     Weckel contends that Cole + Russell's failure to resolve its licensing issues for several years and to consider other options besides the termination of the settlement agreement shows that it did not act in good faith.  He argues that a party to a contract should not be permitted to use its own illegal conduct to justify the failure of a condition precedent.  This argument is without merit.

{¶33}  The record does not demonstrate that Cole + Russell knew about the licensing issues at the time it entered into the settlement agreement.   Once it discovered those issues, it took steps to fix them, but those fixes took time.  Once the condition precedent was not fulfilled, it was not incumbent on the company to immediately take the steps Weckel sets forth.  The settlement agreement did not provide for any contingency plan if the independent advisor did not approve the stock sale to the ESOP.  Further, the record shows that the licensing issues were complicated, and valid business reasons existed not to take the steps Weckel claims could have been taken.  Ultimately, the company converted the ESOP to a 401k, but it was not in a position to do so for a number of years due to the economic downturn.

{¶34}  It is true that a party cannot be excused from performance merely because performance may prove difficult, burdensome or economically disadvantageous. *Stand Energy Corp. v. Cinergy Serv., Inc.,* 144 Ohio App.3d 410, 416, 760 N.E.2d 453, (1st Dist.2001).  But, here the issue is not that performance was burdensome.  The condition precedent was not fulfilled, and this court cannot simply rewrite the contract.

### V. Summary

{¶35}    In sum, we cannot hold that the trier of fact lost is its way and created such a manifest miscarriage of judgment that we must reverse the trial court's judgment and order a new hearing.   Therefore the judgment was not against the manifest weight of the evidence.   *See Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 20; *Nauth*, 9th Dist. Medina No. 15CA0025-M, 2016-Ohio-5089, at ¶ 7; *Lehigh Gas-Ohio*, 1st Dist. Hamilton No. C-130127, 2014-Ohio-2799, at ¶ 44.   We overrule Weckel's assignment of error and affirm the trial court's judgment.

Judgment affirmed.


**ZAYAS** and **DETERS, JJ.,** concur.


Please note:

The court has recorded its own entry this date.