[Cite as *Lally v. Mukkada*, 2011-Ohio-3681.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

EDWARD LALLY,                    :          APPEAL NO. C-100602
                                            TRIAL NO. A-0800142
    Plaintiff-Appellant,        :
                                            *D E C I S I O N.*
  vs.                          :

THRESIAMMA MUKKADA, M.D.,         :

  and                          :

INDEPENDENT                      :
ANESTHESIOLOGISTS, P.S.C.,
                                 :
    Defendants-Appellees.

                                 :

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  July 29, 2011

*Sutton Rankin Law, PLC*, *Harry D. Rankin*, and *Roger N. Braden*, for Plaintiff-Appellant,

*Lindhorst & Dreidame*, *Michael F. Lyon*, and *Bradley D. McPeek*, for Defendants-Appellees.

Please note:  This case has been removed from the accelerated calendar.

**SUNDERMANN, Presiding Judge.**

{¶1}     Edward Lally appeals the trial court's judgment that denied his motion for a directed verdict and motion for a judgment notwithstanding the verdict or a new trial, and that entered judgment in favor of Thresiamma A. Mukkada, M.D., and Independent Anesthesiologists, P.S.C.  We conclude that Lally's sole assignment of error is without merit, so we affirm the judgment of the trial court.

{¶2}     Lally filed a complaint against Mukkada in which he alleged that Mukkada had failed to meet the standard of care for an anesthesiologist.  The case was tried to a jury.  During trial, Lally presented evidence that, in July 2006, he had gone to Tri-State Centers for Sight for outpatient cataract surgery on his right eye.  Mukkada, who is an anesthesiologist for Independent Anesthesiologists, administered anesthetic in the area around Lally's right eye.  After Mukkada had performed the procedure, Dr. Jean Noll, who was to perform the cataract surgery, realized that Lally's right eye had been injured.  The cataract surgery was cancelled, and Lally was referred to Dr. Christopher Devine, a retinal specialist.  According to Devine, Lally had lost pressure in his eye as a result of the anesthesia procedure.  Devine monitored the condition of Lally's eye over several weeks and on August 24, 2006, performed vitrectomy surgery to remove the lens and the original cataract from the eye and to clear the blood from the back cavity of the eye.  Devine testified that when the vitrectomy was performed, Lally's retina was completely detached.  According to Devine, Lally could be categorized as blind in his right eye.

{¶3}     At the conclusion of the defense's case, Lally moved for a directed verdict, which was denied by the trial court.  The jury found in favor of Mukkada and

Independent Anesthesiologists. Lally filed a motion for a judgment notwithstanding the verdict and/or a new trial. That motion was also denied by the trial court.

{¶4}     In his sole assignment of error, Lally asserts that the trial court erred when it denied his motion for a directed verdict and his motion for a judgment notwithstanding the verdict ("JNOV") and/or a new trial.

{¶5}     "The standards applied to motions for directed verdict and motions for judgment notwithstanding the verdict are identical."[1] Under Civ.R. 50(A)(4), the trial court should direct a verdict or enter a judgment notwithstanding the verdict when, "after construing the evidence most strongly in favor of the party against whom the motion is directed, [the trial court] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]" This court reviews the trial court's decision de novo.[2]

{¶6}     The trial court's standard for ruling upon a motion for a new trial under Civ.R. 59(A)(6) requires that the court "weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence."[3] We review the trial court's denial of a motion for a new trial under an abuse-of-discretion standard.[4]

{¶7}     Lally contends that Mukkada failed to meet the standard of care for an anesthesiologist because the evidence showed that Mukkada had performed a

---

[1] *Mantua Mfg. Co. v. Commerce Exchange Bank*, 75 Ohio St.3d 1, 3, 1996-Ohio-187, 661 N.E.2d 161.
[2] *Merkl v. Seibert*, 1st Dist. Nos. C-080973 and C-081033, 2009-Ohio-5473, ¶52.
[3] *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 262 N.E.2d 685, paragraph three of the syllabus.
[4] Id., paragraph one of the syllabus. See, also, *Merkl*, supra, at ¶56-57.

3

"peribulbar procedure" for which she was not trained. During Mukkada's deposition, there was confusion between the terms "periobulbar" and "peribulbar." According to Dr. Allan Flach, an expert witness for Mukkada, a "peribulbar injection involves taking a long needle, an inch and a quarter, an inch and a half, and passing it way back beyond the equator of the eye." Mukkada admitted that she had no training in peribulbar injections. But on the anesthesia record that she had filled out for Lally's procedure, Mukkada had checked the box indicating that she had done a peribulbar injection. There was no box on the form for "periobulbar injection."

{¶8} Despite the confusion in the terms, there was sufficient evidence presented by Mukkada that she had not performed a peribulbar injection but a periobulbar injection. Mukkada described the procedure that she performed as one involving a needle less than .5 inch in length. According to Mukkada, during the procedure, she injected anesthesia in two locations around Lally's eye. Flach reviewed Mukkada's description of the procedure, and his testimony was consistent with a determination that Mukkada had administered a periobulbar injection.

{¶9} There was sufficient evidence presented that Mukkada had met the standard of care when she performed the procedure. And Lally did not call an anesthesiologist to testify about whether the procedure was properly performed. Although Lally presented evidence that his eye had been injured during the procedure, there was evidence presented by Mukkada that an injury could have occurred due to the physiology of Lally's eye. And Flach testified that Devine's scans of Lally's eye in the weeks after the anesthesia procedure must have indicated that Lally's retina was not detached. According to Flach, Devine would not have performed a vitrectomy if the retina was not in a safe position. Flach stated, "So as best I can tell from the records then, Doctor Devine saw Mr. Lally, he expected to go

in with a nicely attached retina there. In other words, the film was in the camera, and then he was simply going to take out the cloudy lens, put in a clear lens, take the blood and any abnormal vitreous out, and he was expecting, I believe, a good result for Mr. Lally." Such testimony called into question whether Mukkada's procedure had caused Lally's vision loss.

{¶10} Lally next contends that even if Mukkada presented sufficient evidence that she had performed a periobulbar injection, she still fell below the standard of care because the procedure was not recognized as appropriate for cataract surgery. Lally points to the testimony of Drs. Andrew Dahl and Flach, who testified that they had never seen the procedure used for cataract surgery. But whether the procedure was indicated for cataract surgery did not bear on whether Mukkada performed the injection consistent with the standard of care for an anesthesiologist. Mukkada's testimony was that she performed the procedure at the request of Dr. Michael Halpin, who was originally scheduled to perform Lally's cataract surgery, and Dr. Noll, who cancelled the surgery after seeing the injury to Lally's eye. It did not fall within the purview of her specialty to determine whether the anesthesia procedure chosen by the ophthalmologists was appropriate for cataract surgery.

{¶11} Construing the evidence most strongly in favor of Mukkada, we conclude that reasonable minds could have differed on whether Mukkada had met the standard of care attributable to anesthesiologists. The trial court properly denied Lally's motions for a directed verdict and for a JNOV. Also, we conclude that the record supports the judgment of the trial court that the jury's verdict was not against the manifest weight of the evidence. Accordingly, we find no abuse of discretion by

the trial court in overruling Lally's motion for a new trial. The sole assignment of error is without merit, and we therefore affirm the judgment of the trial court.

Judgment affirmed.

**HENDON** and **CUNNINGHAM, JJ.,** concur.

Please Note:

The court has recorded its own entry this date.