[Cite as *Weckel v. Cole + Russell Architects*, 2013-Ohio-2718.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| FREDERIC C. WECKEL, | : | APPEAL NO. C-110590 |
| | | TRIAL NO. A-0407805 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| COLE + RUSSELL ARCHITECTS, | : | |
| | | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court Common Pleas Court

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  June 28, 2013

*Tobias, Torchia & Simo* and *David Torchia*, for Plaintiff-Appellant,

*Frost Brown Todd, LLC,* and *Kasey Bond,* for Defendant-Appellee.

CUNNINGHAM, **Judge.**

{¶1} Plaintiff-appellant Frederic C. Weckel appeals from the trial court's December 5, 2008 entry denying his motion to reopen discovery and from its September 7, 2011 order denying his motion for a new trial. Weckel had been a managing principal of defendant-appellee Cole + Russell Architects ("Cole + Russell"), a national architectural practice located in Cincinnati, Ohio. In March 2004, Cole + Russell terminated Weckel's employment.

{¶2} Weckel eventually brought claims against his former employer for breach of fiduciary duty to minority shareholders and for wrongful termination in violation of public policy. After engaging in discovery, the parties reached a settlement agreement in January 2008. Six months later, Cole + Russell declared that a condition precedent to the agreement—approval by an independent fiduciary, Thomas Potts, Jr.—had failed, and declared the agreement null and void.

{¶3} In August 2008, Weckel moved to reopen discovery into the fiduciary's opinion for evidence that Cole + Russell had breached its duty of good faith and fair dealing. Weckel also moved to enforce the settlement agreement. Without explanation, the trial court denied the motion to reopen discovery. In August 2009, the trial court adopted a magistrate's decision denying the motion to enforce the settlement agreement, and entered summary judgment on Weckel's breach-of-fiduciary-duty claims. The order did not include the trial court's express determination that there was no just cause for delay. *See* Civ.R. 54(B).

{¶4} The matter was then referred to a visiting judge. Weckel tried his remaining claims to a jury. He alleged that he had been fired, in violation of public policy, for hiring counsel to address a tax-deferral issue related to Cole + Russell's employee stock ownership plan ("ESOP") and for highlighting his concerns that the tax-deferral plan constituted a fraud upon the shareholders. Over the course of a seven-day trial, the jury heard the testimony of six witnesses and reviewed over 75 exhibits. The jury answered interrogatories, found Weckel's claims to be without merit,

and returned a unanimous verdict in favor of Cole + Russell. Weckel moved for a new trial on the ground that the judgment entered on the verdict was against the manifest weight of the evidence. The trial court denied the motion, and this appeal ensued.

{¶5} Because we hold that the trial court abused its discretion in extinguishing discovery into whether the fiduciary's opinion was well supported and prudent or was a pretext, we reverse the trial court's entry denying the reopening of discovery. We also vacate that portion of the trial court's August 5, 2009 entry denying Weckel's motion to enforce the settlement agreement, solely on grounds that the failure to grant the order to reopen discovery denied Weckel the ability to present evidence of bad faith by Cole + Russell. Finding no error in the trial court's denial of Weckel's new-trial motion, we otherwise affirm the judgment below.

## I. Facts

{¶6} Cole + Russell had been founded in 1982 by Tom Cole and John Russell. Weckel, a personal friend of Cole's, joined the firm in 1994 as director of marketing. In part due to Weckel's efforts, by 2004, Cole + Russell had achieved great success. It had a national reputation for excellence and had completed projects in more than 40 states.

{¶7} Weckel was a managing principal in the firm. He was a member of the board of directors and was Cole + Russell's second largest shareholder. Weckel was the only person other than Tom Cole and John Russell to have been offered a postretirement consulting agreement and deferred compensation. Russell acknowledged that during Weckel's first five years with the firm, "things were going pretty well," but he asserted that in 2000, things began to change. Tom Cole, who had brought Weckel to the firm, announced his plans to retire. Cole retired in March 2001 and sold his shares of Cole + Russell stock to the ESOP. Russell and Weckel often clashed over policy and particularly over the various stock ownership plans adopted by the firm and the proper valuation of its shares. Russell found Weckel's behavior greedy and offensive.

{¶8}     Russell learned from Cole, from Cole + Russell's president, David Arends, and from the firm's school-market leader, Tom Lyndsey, that Weckel's actions were affecting employee morale, and were hurting the firm's professional reputation. Lyndsey asked to have Weckel removed from a project for a local parochial school. Russell then learned that Weckel had alienated another potential suburban-school client during a meeting.

{¶9}     Cole + Russell finally terminated Weckel's employment on March 26, 2004. The parties tried, but failed, to negotiate a severance package for Weckel. In September 2004, Weckel brought this action seeking, in part, the enforcement of an agreement he alleged had been reached in the severance negotiations. Weckel later abandoned his efforts to enforce the 2004 agreement and amended his complaint to include claims of wrongful discharge in violation of public policy and breach of fiduciary duty. Cole + Russell answered the complaint, and the parties began discovery.

{¶10}   On January 9, 2007, the trial court journalized an amended case-management order providing that all discovery was to be completed no later than September 6, 2007. In mid-September 2007, Cole + Russell moved for summary judgment. Weckel responded, but, by mutual agreement, the matter was suspended to permit the parties to proceed to private mediation and settlement discussions.

{¶11}   In early 2008, the parties reached a agreement to settle the lawsuit. As part of the agreement, Weckel was to sell his shares of Cole + Russell stock to the firm's ESOP, rather than redeeming them pursuant to his shareholder agreement. In exchange for the substantial settlement, Weckel would end his then-four-year-old lawsuit against Cole + Russell. A January 31, 2008 letter from Cole + Russell's prior counsel[1] stated that Weckel's and Arends' signatures "on this letter will verify that they have agreed to the essential terms and conditions of a binding settlement so that

---

[1] Cole + Russell's current counsel replaced prior counsel on August 14, 2008.

4

neither party can change its mind or attempt to renegotiate any of the substantive terms of settlement." The agreement provided as follows:

> The ESOP purchase of Weckel's stock is contingent on the professional opinion of an independent adviser who must approve the ESOP's purchase of Weckel's shares. This step is required to protect the ESOP Trustee and is estimated to take 30-60 days. * * * The cost of the independent ESOP consultant's review, which is approximately $30,000.00, will be borne by [Cole + Russell].

{¶12} Cole + Russell hired Potts as the independent advisor for the ESOP trustee. The draft stock-purchase agreement, prepared in April, provided that Potts was to act "solely" as an independent fiduciary "for, and on behalf of," the ESOP.

{¶13} On May 15, 2008, Cole + Russell's prior counsel advised Weckel of a potential problem regarding the impact of the ESOP's purchasing Weckel's stock and becoming a majority owner of Cole + Russell. Cole + Russell indicated that it intended to go forward with the settlement agreement, and that it was attempting to resolve this problem.

{¶14} On July 21, Cole + Russell provided Weckel with a copy of a July 16, 2008 letter from Potts, addressed to Cole + Russell's board of directors. Potts stated that he had conferred with the directors the day before. He recounted their discussion that the ESOP's purchase of Weckel's shares "may present obstacles to [Cole + Russell's] ability to do business in several states, including ones from which it obtains significant revenue." Potts continued as follows:

> I understand that [Cole + Russell] is exploring alternatives to resolve these issues. However, given the current state of uncertainty, and the importance to [Cole + Russell] of its ability to operate on a regional and national basis, it does not appear to be prudent at this

5

time for the ESOP to increase its ownership in [Cole + Russell] beyond its current level of 40%. Therefore, until the licensure issues can be satisfactorily resolved, I have determined, in my capacity as special fiduciary for the ESOP, that the ESOP will not be able to consummate the purchase of shares owned by Fred Weckel.

However, if [Cole + Russell] is able to satisfactorily resolve these licensure issues, my determination regarding the ability of the ESOP to purchase additional shares * * * could change.

{¶15}   Cole + Russell's letter also declared that as a result of Potts' opinion, a material and substantial condition precedent to the settlement agreement had not been satisfied. Therefore, it considered the agreement "null and void."

{¶16}   Cole + Russell made no attempts to resolve the ownership issue. Weckel's requests to meet with the interested parties were fruitless. Weckel then moved to reopen discovery to depose Potts and to explore the basis for his opinion. The trial court denied the motion in a one-sentence entry.

{¶17}   In February 2009, Weckel moved to enforce the settlement agreement. Cole + Russell opposed the motion and reinstated their summary-judgment motion that had been held in abeyance since late 2007. The magistrate denied Weckel's motion to enforce the settlement agreement, and granted Cole + Russell's summary-judgment motion on Weckel's breach-of-fiduciary-duty claims.

## II. Weckel's Motion to Reopen Discovery

{¶18}   In his first assignment of error, Weckel asserts that the trial court erred by not allowing discovery into the basis of Potts' opinion and by refusing to enforce the 2008 settlement agreement. Weckel first argues that the trial court abused its discretion by denying his discovery motion, because an inquiry into the basis of Potts' opinion was relevant to explaining Cole + Russell's actions and to

determining whether, in terminating the settlement agreement, it had breached its duty of good faith and fair dealing.

{¶19}    Weckel contends that deposing Potts or reviewing the documentary fundament of his opinion would reasonably lead to the discovery of admissible evidence in the then-pending motion to enforce the settlement agreement. Cole + Russell maintains that Weckel's argument focuses entirely on speculation concerning Potts' motives for not approving the sale of Weckel's company stock to the ESOP. It argues that Weckel does not dispute the reasonableness of Potts' opinion. It also asserts that even if Weckel was entitled to the requested discovery, his motion was untimely.

### a.  Settlement agreements are favored by the law

{¶20}    A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation.   Settlement agreements are highly favored in the law. *See Cembex Care Solutions, LLC v. Gockerman*, 1st Dist. No. C-050623, 2006-Ohio-3173, ¶ 6, citing *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996), and *State ex rel. Wright v. Weyandt*, 50 Ohio St.2d 194, 363 N.E.2d 1387 (1977).

{¶21}    Every contract, including a settlement agreement, contains an implied duty for parties to act in good faith and to deal fairly with each other.  *See Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005-Ohio-4850, 839 N.E.2d 49, ¶ 27 (1st Dist.); *see also Ward v. Cent. Inv. LLC*, 1st Dist. Nos. C-100080 and C-100081, 2010-Ohio-6114, ¶ 19.   This is particularly so when one party has direct influence over the satisfaction of a condition precedent and has sole possession of the facts underlying its decision that the condition had not been fulfilled.  *See Johnston v. Cochran*, 10th Dist. No. 06AP-1065, 2007-Ohio-4408, ¶ 13; *see also Serand Corp. v. Owning the Realty, Inc.,* 1st Dist. No. C-941010, 1995 Ohio App. LEXIS 4932 (Nov. 1, 1995).

{¶22}   Thus, Weckel had a strong interest in gaining information relevant to his pending claim that Cole + Russell had not acted in good faith.

### b. Discovery is designed to prevent unfair surprise and the secreting of evidence

{¶23}   Civ.R. 26 defines the scope of discovery: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." This standard is much broader than the test for relevancy of evidence at trial. *See Covington v. The MetroHealth Sys.* 150 Ohio App.3d 558, 2002-Ohio-6629, 782 N.E.2d 624, ¶ 23 (10th Dist.). Matters are only irrelevant at the discovery stage when the information sought will not reasonably lead to the discovery of admissible evidence. *See Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶ 27 and 28.

{¶24}   The purpose of discovery under the civil rules is to prevent unfair surprise and the secreting of evidence by ensuring the free flow of information between the parties upon request. *See Knowlton v. Schultz*, 179 Ohio App.3d 497, 2008-Ohio-5984, 902 N.E.2d 548 ¶ 45 (1st Dist.), citing *Shumaker v. Oliver B. Cannon & Sons, Inc.*, 28 Ohio St.3d 367, 370, 504 N.E.2d 44 (1986); *see also Brokamp v. Mercy Hosp.*, 132 Ohio App.3d 850, 860, 726 N.E.2d 594 (1st Dist.1999). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

{¶25}   While a trial court has broad discretion to regulate discovery, that discretion is not boundless. *See State ex rel. Mason v. Burnside*, 117 Ohio St.3d 1, 2007-Ohio-6754, 881 N.E.2d 224, ¶ 11; *see also Grace v. Mastruserio*, 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, ¶ 13 (1st Dist.) (an appellate court reviews the trial court's ruling on discovery matters under an abuse-of-discretion

standard).    An appellate court may reverse a discovery order "when the trial court has erroneously denied or limited discovery." *Mauzy v. Kelly Serv., Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996), citing Wright, Miller & Marcus, *Federal Practice & Procedure*, Section 2006 at 92 (2d Ed.1994).

{¶26}    An appellate court may reverse a trial court's order extinguishing a party's right to discovery if that order was improvidently granted and affects the substantial rights of the party seeking discovery.  *See Rossman v. Rossman*, 47 Ohio App.2d 103, 110, 352 N.E.2d 149 (8th Dist.1975); *see also Biddle v. Biddle*, 2d Dist. No. 2000 CA 67, 2000 Ohio App. LEXIS 5762 (Dec. 12, 2000); *St. Joseph's Hosp. v. Hoyt*, 4th Dist. No. 04CA20, 2005-Ohio-480, ¶ 32; *Bellinger v. Weight Watchers Gourmet Food Co.*, 142 Ohio App.3d 708, 717, 756 N.E.2d 1251 (5th Dist.2001); *Gullet v. Reservoir*, 6th Dist. No. H-02-056, 2003-Ohio-3842, ¶ 20; *Perfection Corp. v. Travelers Cas. & Sur.*, 153 Ohio App.3d 28, 2003-Ohio-3358, 790 N.E.2d 817 (8th Dist.); *Simeone v. Girard City Bd. of Edn.*, 171 Ohio App.3d 633, 2007-Ohio-1775, 872 N.E.2d 344 (11th Dist.); *State ex rel. Fisher v. Rose Chevrolet, Inc.*, 82 Ohio App.3d 520, 523, 612 N.E.2d 782 (12th Dist.1992).

{¶27}    Here, Weckel was entitled to inquire into the facts that Cole + Russell had used to justify its declaration that the condition precedent had failed.  Those facts were in the possession of Potts alone and clearly affected substantial matters relevant to Weckel's motion to enforce the settlement agreement.  Questioning Potts would reasonably lead to the discovery of admissible evidence in the pending action.

{¶28}    Weckel came forth with specific allegations that Cole + Russell's stated justification for voiding the settlement agreement was a pretext, pointing to what he viewed as questionable assertions by Potts.  Specifically, Potts had noted that purchasing Weckel's stock could increase the ESOP's ownership in Cole + Russell "beyond its current level of 40%," thus calling into question "its ability to operate on a regional and national basis."  Yet information obtained, both in the

permitted discovery period and at trial, revealed that the ESOP's ownership level had been at or near 40 percent for seven years, and had often exceeded that percentage, without adverse effects on the firm. According to a January 22, 2008 valuation report issued by Comstock Valuation Advisors, Inc., the ESOP had owned at least 40 percent of Cole + Russell's stock since its creation in March 2001, when it had purchased Cole's 1,884 shares. When 1,264 shares of Russell's stock were placed in a voting trust controlled by the ESOP, it controlled 51 percent of the outstanding shares.

{¶29}   Potts had discussed the ownership matter with Cole + Russell's board of directors the day before he issued his letter. Potts refused to explain why the ownership-percentage issue now threatened the firm's business. Cole + Russell made no attempts to resolve the ownership issue, despite Potts' belief, as stated in his July 16 letter, that it was exploring alternatives to resolve the licensure issue.

{¶30}   Despite these facts, the trial court refused to permit Weckel to reopen discovery. Weckel was entitled to engage in discovery to determine whether Potts' opinion was indeed independent or whether it had been influenced by Cole + Russell as a pretext to terminate the settlement agreement because this information was relevant to his claim that Cole + Russell had not acted in good faith. We hold, therefore, that the trial court abused its discretion in not reopening discovery into whether Potts' opinion was well supported and prudent or was pretextual.

### c. Weckel's motion for additional discovery was timely

{¶31}   Cole + Russell argues that, even if Weckel's motion to reopen discovery was otherwise appropriate, the motion was untimely and was properly denied. Weckel's motion was filed more than a year after the trial court's September 2007 discovery cut-off date and more than four years after the complaint had been filed.

10

{¶32} The timely disposition of pretrial discovery is an important matter, particularly where extensive discovery has already occurred. *See Mitchell v. Internatl. Flavors & Fragrances, Inc.*, 179 Ohio App.3d 365, 2008-Ohio-3697, 902 N.E.2d 37 (1st Dist.) (trial court did not abuse its discretion by refusing to extend discovery where the case had been pending for over three years); *see also Anginoli v. The Benenson Capital Co.*, 1st Dist. No. C-980811, 1999 Ohio App. LEXIS 6218, *8 (Dec. 23, 1999) (discovery properly terminated after two years, including more than a dozen depositions and thousands of pages of documents). And a trial court may end discovery when the party seeking an extension has failed to issue interrogatories, to obtain documents, or to schedule depositions during the original discovery period. *See Sipple v. A.G. Edwards & Sons, Inc.*, 1st Dist. No. C-010701, 2002-Ohio-4342, ¶ 10.

{¶33} But a trial court's exercise of its discretion to end discovery "must be justified by a weightier interest than expediency," particularly when, as here, the party opposing discovery alone possessed the facts substantiating or disproving the matter in dispute. *Rossman*, 47 Ohio App.2d at 110, 352 N.E.2d 149; *see Johnston*, 2007-Ohio-4408, at ¶ 13 (holding that a party cannot benefit from an unfulfilled condition precedent without first demonstrating that it exercised good faith and diligence in trying to satisfy the condition); *see also Serand Corp., supra.*

{¶34} Here, Weckel's need to investigate the basis of Potts' opinion arose only after the trial court's original order ending discovery in September 2007. Weckel moved to reopen discovery within four months of learning of the Potts letter and of Cole + Russell's declaration that the agreement was null and void. During that four-month period, Weckel actively sought information about the Potts opinion. Acting in a professional manner, Weckel's counsel sought to discuss the matter with counsel for Potts and Cole + Russell. Weckel asked Potts' counsel whether progress was being made to resolve the ownership issue and to reanimate the settlement

11

agreement. In his motion to reopen, Weckel contended that Potts' counsel was instructed not to discuss the matter with Weckel. Weckel also stated that the parties had met with the trial court on August 22, 2008, that he had sought permission to depose Potts, and that the trial court had urged the parties to resolve the dispute themselves.

{¶35} Because Weckel's need to depose Potts arose only in mid-2008, and because he took other actions to resolve the issue before moving to reopen discovery in November 2008, Weckel's motion to reopen was timely filed.

{¶36} Therefore, the trial court abused its discretion in denying Weckel's motion to reopen discovery and to depose Potts.

### d. The motion to enforce the settlement agreement

{¶37} In the remaining argument raised in his first assignment of error, Weckel contends that the magistrate and the trial court erred in failing to hold an evidentiary hearing before ruling on his motion to enforce the settlement agreement.

{¶38} Weckel maintains that the proper course of action would have been for the trial court to permit discovery and then to conduct an evidentiary hearing on the validity of the disputed condition precedent. *See Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337, (1997), syllabus ("Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment."); *see also Lawrence v. Russell*, 1st Dist. No. C-000008, 2000 Ohio App. LEXIS 3598, *3 (Aug. 11, 2000).

{¶39} In its May 2009 decision denying Weckel's motion to enforce the settlement agreement, the magistrate based its decision, in part, on a rejection of Weckel's argument that the failure of the condition precedent had been a pretext for avoiding the settlement. In light of our holding that the trial court erred in denying

Weckel's motion to reopen discovery, we must vacate that portion of the magistrate's decision, adopted by the trial court on August 5, 2009, denying Weckel's motion to enforce. We vacate the decision solely on grounds that the failure to grant the order to reopen discovery denied Weckel the ability to present evidence of bad faith by Cole + Russell.

{¶40}  Therefore, we sustain the first assignment of error.

### III. Judgment on Public-Policy Claims Is Sustained by the Manifest Weight of the Evidence

{¶41}  Weckel next argues that the trial court erred in denying his motion for a new trial, made on grounds that the judgment had been against the manifest weight of the evidence. *See* Civ.R. 59(A)(6). The gravamen of Weckel's argument is that the trial court misconstrued its role in ruling on the motion and simply deferred to the jury's credibility determinations. Weckel also argues that the jury's verdict and its answers to the interrogatories were against the manifest weight of the evidence. We disagree.

{¶42}  Civ.R. 59(A)(6) permits a trial court to grant a new trial when the "judgment is not sustained by the weight of the evidence." The trial court must weigh the evidence and credibility of the witnesses, not "in the substantially unlimited sense" that a jury does, but "in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence." *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph three of the syllabus; *see Lally v. Thresiamma*, 1st Dist. No. C-100602, 2011-Ohio-3681, ¶ 6; *Weber v. Kinnen*, 1st Dist. No. C-100801, 2011-Ohio-6718, ¶ 17. Thus, a trial court has broad discretion in determining whether to order a new trial. But "[t]he trial court may not set aside the jury's verdict * * * due to a 'mere difference of opinion'; rather the relief should be granted only when the trial court is persuaded that there is insufficient credible evidence to sustain the verdict in light of the other evidence presented." *Green v. Bailey*, 1st Dist. No. C-070221, 2008-Ohio-3569, ¶ 13, quoting *Rohde* at 92; *see Weber* at ¶ 17.

13

{¶43} When reviewing the trial court's decision on whether to grant a new trial, we may reverse only if we conclude that the trial court abused its discretion. *See Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312, 649 N.E.2d 1219 (1995); *see also Lambda Research, Inc. v. Jacobs*, 1st Dist. No. C-100796, 2013-Ohio-348, ¶ 5; *Weber* at ¶ 13. An abuse of discretion is shown when a decision is unreasonable, arbitrary, or unconscionable; that is, when there is no sound reasoning process that would support the decision. *See State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980); *see also AAAA Enterprises, Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶44} Weckel first argues that the trial court merely adopted the jury's credibility determinations without conducting an independent analysis. The record, however, reflects that, at the hearing on the motion, the trial court extensively questioned Weckel and Cole + Russell on the evidence presented during the seven-day trial. During oral argument on the motion, in a discussion with Weckel's counsel, the court acknowledged its responsibility to review and to weigh the evidence in resolving the motion. And the record reflects that the trial court discharged that responsibility. The court stated that, "based on the evidence as I've heard it * * * in great detail," the jury was presented with ample evidence to support either party's theory of the trial. Therefore, the court could not find a serious error in the jury's verdict, noting that "[w]hether I agree with it or not is immaterial." It is clear that the trial court engaged in the analysis required under the rule: it weighed the evidence and credibility of the witnesses and determined whether a manifest injustice had occurred or whether there had been sufficient credible evidence to sustain the verdict.

{¶45} Weckel next challenges the balance struck by the jury in determining that Weckel's discharge was not motivated by his consultation with counsel or by his good-faith opposition to alleged shareholder fraud. We note that the jury returned a verdict in favor of Cole + Russell and answered "no" to interrogatories that asked whether Weckel

14

had proved by a preponderance of the evidence (1) that he had been terminated for consulting with an attorney about the tax deferability of proceeds from the sale of stock to the ESOP, (2) that he had been terminated for raising concerns about the tax deferability that he, in good faith, believed constituted fraud upon the Cole + Russell shareholders, and (3) that Cole + Russell had "no legitimate overriding business justification" for terminating his employment.

{¶46}    Weckel now argues that the jury, in reaching its verdict, ignored largely undisputed evidence concerning the timing of Weckel's discharge, along with Russell's journal entries expressing his personal and professional frustration with Weckel.  Yet Cole + Russell presented ample evidence to dispute these claims.  Weckel's discharge came only after performance problems had arisen, and long after his working relationship with Russell had collapsed.  While Weckel had often performed well on behalf of Cole + Russell's interests, the jury was free to determine that Weckel's discharge was the result of significant problems in his performance that had arisen in 2004, that had affected employee morale, and that had called the firm's professional reputation into question.

{¶47}    Russell testified that when Weckel first had raised his concerns about whether he would be able to defer taxes when he sold his shares to the ESOP, it was Russell who had directed the firm's lawyers to help resolve the tax issue.  And Russell later urged Weckel to retain his own counsel to protect his interests.  Despite Weckel's testimony to the contrary, Russell testified that the tax-deferral issue had not been a legitimate concern for other shareholders.  The buy-back plan creating the ESOP and its tax-deferral benefit applied only to Cole, Russell, and Weckel.  All other shareholders would sell their stock in accordance with the terms of their stock-purchase agreements. Weckel had not discussed the matter extensively with shareholders other than Russell and the firm's officers.  Weckel's principal concern was the redemption of his own stock and a bonus sufficient to pay for the tax consequences.

15

**{¶48}** Having reviewed the extensive record, we hold that there was substantial credible evidence to support the jury's conclusion that Weckel had not been terminated in violation of public policy. We conclude, therefore, that the trial court did not abuse its discretion when it denied Weckel's motion for a new trial. Accordingly, the second assignment of error is overruled.

### IV. Conclusion

**{¶49}** In light of our resolution of the first assignment of error, we reverse the trial court's December 5, 2008 entry denying Weckel's motion to reopen discovery. We also vacate that portion of the magistrate's decision, adopted by the trial court on August 5, 2009, denying Weckel's motion to enforce the settlement agreement. We otherwise affirm the trial court's judgment.

**{¶50}** The cause is remanded to the trial court for Weckel to conduct the requested discovery, and for further proceedings consistent with law and this opinion.

Judgment accordingly.

**HILDEBRANDT, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.