**BELLINGER, Appellant,**

v.

**WEIGHT WATCHERS GOURMET FOOD COMPANY et al., Appellees.**

[Cite as *Bellinger v. Weight Watchers Gourmet Food Co.* (2001), 142 Ohio App.3d 708.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2000CA00345.

Decided May 7, 2001.

710

*Allen G. Carter, Sr.,* for appellant.

*Tod T. Morrow, Mark D. Frasure* and *Rhonda L. Warren,* for appellees.

FARMER, Judge.

On July 22, 1985, appellant, Kenneth Bellinger, began working for appellee, Weight Watchers Gourmet Food Company. On December 5, 1996, appellant cut his finger at work. As a result of the incident, appellant was told to produce a urine sample pursuant to appellee's Drug and Alcohol Policy. At first, appellant refused to submit a urine sample, but he eventually complied with the request on December 10, 1996. The test came back positive for marijuana. As a result, appellant signed a "Last Chance Agreement." The agreement stated that appellant could return to work but he would have to enroll in a drug- and alcohol-abuse treatment program. In addition, the agreement provided that appellant would be subject to random drug/alcohol screens for twelve months. The agreement called for appellant's termination in the event of a positive reading.

On December 16, 1997, appellant was asked to submit a random drug/alcohol test. The sample was sent to appellee Center for Occupational Medicine MRO, a.k.a. Occupational Medicine Association of Stark County, Inc., for testing. Testing was done under the supervision of appellee Daniel N. Larusso, D.O. The test came back positive for marijuana. Appellee Weight Watchers terminated appellant on January 12, 1998.

On December 24, 1998, appellant filed a complaint against appellees and others claiming discrimination, invasion of privacy, wrongful discharge, fraud, misrepresentation, and negligence. An amended complaint was filed on March 5, 1999. On March 22, 2000, appellee Weight Watchers filed a motion for summary judgment. Appellees Occupational Medicine and Dr. Larusso filed their motion for summary judgment on September 15, 2000. By judgment entry filed October 13, 2000, the trial court granted both motions.

Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

"The trial court erred when it entered summary judgment against plaintiff-appellant's discrimination claims."

II

"The trial court erred when it entered summary judgment against plaintiff-appellant's invasion of privacy claim."

III

"The trial court erred when it entered summary judgment against plaintiff-appellant's wrongful discharge claim."

IV

"The trial court erred when it entered summary judgment against plaintiff-appellant's fraud and misrepresentation claim."

V

"The trial court erred when it entered summary judgment against plaintiff-appellant's negligence claims."

## VI

"The trial court erred when it denied plaintiff-appellant's motion for enlargement of time to complete discovery as well as his motion to revise all case management dates and the use of the alternate trial date."

## I, II, III, IV, V

Appellant claims the trial court erred in granting summary judgment to appellees. We disagree.

Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. That rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448, 663 N.E.2d 639, 640–641:

"Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274."

As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212.

Appellant claims that the trial court erred in granting summary judgment to appellees on his claims for discrimination, invasion of privacy, wrongful discharge, fraud, misrepresentation, and negligence. We will examine each claim separately.

## DISCRIMINATION

Appellant claims that appellee Weight Watchers failed to apply its drug and alcohol policy in a nondiscriminatory manner. This discriminatory application of the policy was "a primary factor" in his termination. Appellant is a white male.

In *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677, the United States Supreme Court set forth an outline of the elements necessary to establish a prima facie case of discrimination, depending upon the facts of the case:

"This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

■ "In reverse discrimination cases, the first element has been modified to require the plaintiff to show background circumstances supporting the inference that his employer was the unusual employer who discriminated against nonminority employees." *Wagner v. Allied Steel & Tractor Co.* (1995), 105 Ohio App.3d 611, 615, 664 N.E.2d 987, 989, citing *Notari v. Denver Water Dept.* (C.A.10, 1992), 971 F.2d 585, 589.

■ Upon review, we find that appellant failed to establish that Weight Watchers was the "unusual employer" who discriminated against white males. In his own deposition, appellant conceded that he was unaware of any statements or evidence to establish that he was discriminated against because of his race. Appellant presented no evidence that Weight Watchers applied its drug and alcohol policy in a discriminatory manner. Other employees who tested positive were required to sign Last Chance Agreements. Several employees who violated the agreements were terminated, including a black male, two white males, and one white female.

■ Assuming *arguendo* that appellant established a prima facie case of discrimination, the next inquiry is whether Weight Watchers had a legitimate nondiscriminatory reason for terminating appellant. *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807. The Weight Watchers employee handbook clearly provided that employees involved in an accident requiring medical attention will be tested for drugs and alcohol. Any employee that tests positive is subject to disciplinary action "up to and including discharge." Appellant was injured while at work and received medical attention. He complied with the policy and submitted a urine sample, which tested positive for marijuana. Appellant signed the Last Chance Agreement and again tested positive for marijuana. Appellant admitted to using marijuana. Appellant clearly violated company policy and was subject to disciplinary action, which included termination.

The trial court did not err in granting summary judgment on appellant's discrimination claim.

## INVASION OF PRIVACY

■ Appellant claims that his privacy was "tortiously invaded" as Weight Watchers caused his test results to be "released to individuals who had no

legitimate basis to have knowledge of them." Appellant does not list the names of these individuals.

During his deposition, appellant stated that the company nurse, Rosie Blanc, communicated the results of his test to Joelene Mutigli, the company Human Resource Manager. These two individuals were in charge of administering the drug- and alcohol-testing program, so obviously they would have a need to know.

Appellant also claimed that two co-workers, Leona Patton and Athena Manley, may have been told of the results. However, appellant did not present any evidence as to whether they were actually told or who allegedly told them. Appellant's claim merely relied on the "rumor mill." In addition, appellant himself e-mailed several individuals about the matter, including Steve Charles, Mutigli, and Blanc.

Upon review, we agree with Weight Watchers that appellant's claim for invasion of privacy is based upon "hearsay and speculation." The trial court did not err in granting summary judgment on appellant's invasion of privacy claim.

## WRONGFUL DISCHARGE

Appellant claims that he was wrongfully discharged based on the theories of implied contract and promissory estoppel.

In his employment application, appellant acknowledged that "such employment is not for any definite period but may be terminated by either party at any time." The Last Chance Agreement stated that "Ken understands that no oral or written statement signed by him and/or any Company official or employee of Weight Watchers Gourmet Food Company is sufficient to constitute any agreement for employment for any specified period of time." The acknowledgment to the employee handbook, which includes the drug and alcohol policy, states, "I understand that this handbook is simply intended as an informational guide describing personnel policies, benefits and general information and that these guidelines are not to be construed as either a contract or guarantee of continued employment." This acknowledgment was signed by appellant.

Based upon the foregoing, we find that appellant's employment was as an employee-at-will and there was no express or implied contract to the contrary.

Appellant also claims that the drug and alcohol policy contained specific promises of employment. Appellant claims that he relied upon the provisions of the drug and alcohol policy to his detriment and that Weight Watchers failed to follow the policy as it pertained to him and his co-workers. Appellant does not explain how Weight Watchers failed to follow the drug and alcohol policy.

The promissory estoppel exception to the employment-at-will doctrine applies only to specific promises regarding job security. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Appellant's complaints regarding the drug and alcohol policy relate to its administration. Any complaints are irrelevant given the fact that appellant admitted to smoking marijuana. Clearly Weight Watchers had "just cause" to terminate appellant as outlined above.

Based upon the foregoing, we find the doctrine of promissory estoppel is not applicable *sub judice*.

The trial court did not err in granting summary judgment on appellant's wrongful discharge claim.

## FRAUD AND MISREPRESENTATION

Appellant claims that Weight Watchers committed fraud by failing to disclose that a confirmatory test was not done on his December 10, 1996 test. Appellant claims that he relied on this misrepresentation when he signed the Last Chance Agreement.

Appellant's test results were confirmed by gas chromatography mass spectrometry methodology. Further confirmation would have been irrelevant given appellant's admission of marijuana usage. Appellant told Mutigli that his test results would probably be positive.

Appellant claims that he was fraudulently induced to sign the Last Chance Agreement and that then the agreement was used against him to discharge him. Weight Watchers did not need to use the Last Chance Agreement in order to discharge appellant, as he was an employee-at-will.

The trial court did not err in granting summary judgment on appellant's fraud and misrepresentation claims.

## NEGLIGENCE

Appellant claims that appellees Weight Watchers, Dr. Larusso, and Occupational Medicine breached their duty to perform the drug tests in a competent manner pursuant to the drug and alcohol policy and industry standards.

Weight Watchers owed no duty to appellant as to drug testing as appellant was an employee-at-will. Weight Watchers could have discharged appellant without even conducting drug tests. Further, appellant's arguments as to incompetent drug testing is irrelevant given his admissions of marijuana usage.

The trial court did not err in granting summary judgment on appellant's negligence claims.

Assignments of Error I, II, III, IV, and V are denied.

## VI

Appellant claims that the trial court erred in not granting him additional time for discovery before ruling on appellees' motions for summary judgment. We disagree.

Appellant argues that there was evidence revealed late in the discovery process that he wished to pursue. In particular, appellant wanted to retest his 1996 and 1997 urine samples for marijuana.

Appellant argues that he did not know that the samples were still available until the deposition of Dr. Larusso taken on August 26, 2000. The existence of the samples was confirmed by Dr. Larusso's attorney on September 1, 2000. On September 12, 2000, appellant requested additional time for discovery. Appellant wished to investigate the urine samples before the final pretrial.

In *Mauzy v. Kelly Serv., Inc.* (1996), 75 Ohio St.3d 578, 592, 664 N.E.2d 1272, 1283, the Supreme Court of Ohio held the following:

" 'In discovery practices, the trial court has a discretionary power not a ministerial duty.' *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 63 O.O.2d 88, 90, 295 N.E.2d 659, 661. Thus, the standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion. See *Heat & Control, Inc. v. Hester Industries, Inc.* (C.A.Fed.1986), 785 F.2d 1017, 1022.

"Such discretion, however, is not without limits. Although unusual, appellate courts will reverse a discovery order 'when the trial court has erroneously denied or limited discovery.' 8 Wright, Miller & Marcus, Federal Practice & Procedure (2 Ed.1994) 92, Section 2006. Thus, '[a]n appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights.' *Rossman v. Rossman* (1975), 47 Ohio App.2d 103, 110, 1 O.O.3d 206, 210, 352 N.E.2d 149, 153–154."

We assume that the issue regarding the samples goes to the accuracy of the drug screening tests and whether subsequent tests might determine that the first tests, wherein positive results for marijuana were reported, were incorrect. Although this argument is salient as viewed in a vacuum, it is not persuasive *sub judice*.

On December 13, 1996, appellant filled out an intake assessment form for the IMPACT program and admitted to a fifteen-year use of "pot" and using it "[o]nce a month, if that." In particular, appellant admitted to using marijuana some two weeks prior to the accident at work and the 1996 test. Appellant also admitted to smoking marijuana prior to the accident at work and during the one-year term of the Last Chance Agreement.

Appellant's own admissions diminish the relevancy of any retesting of the 1996 and 1997 urine samples.

Further, Weight Watchers' motion for summary judgment was filed on March 22, 2000. On April 6, 2000, appellant asked for additional time for discovery and to respond to the motion. By judgment entry filed April 25, 2000, the trial court extended the discovery cut-off date to September 13, 2000, the date set for the final pretrial. On September 12, 2000, appellant requested additional time. Following the final pretrial, the trial court denied this request.

We fail to find that appellant was prejudiced by the trial court's denial to extend the time yet again. The matter, given the facts as set forth herein, was ripe for ruling.

Assignment of Error VI is denied.

The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

*Judgment affirmed.*

EDWARDS, P.J., and WILLIAM B. HOFFMAN, J., concur.