[Cite as *Taylor v. Heary*, 2019-Ohio-3094.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

DONNA M. TAYLOR,                          :

    Plaintiff-Appellee,              :

                               No. 107474

    v.                                       :

ANDREW D. HEARY,                          :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 1, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-96-248233

---

### *Appearances:*

Wuliger & Wuliger, Megan Spagnolo Lai, and William T. Wuliger, *for appellee.*

Andrew D. Heary, *pro se.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Andrew D. Heary, pro se, appeals an order of the domestic relations court reducing, but not eliminating, his spousal support obligation and finding him in contempt for failing to pay premiums for his ex-wife's long-term care insurance. He claims the following 11 assignments of error:

1. The magistrate incorrectly found that the defendant was to have paid plaintiff's long-term care insurance premiums from his 35% share of his social security disability.

2. The magistrate incorrectly found that Mr. Heary was expected to pay long-term care coverage at the time of [the former magistrate's decision in February 2004].

3. The magistrate falsely states, "Mr. Heary presented no evidence as a defense to failing to pay the claim after January 2003" (in paragraph 3 on page 6, of her June 18, 2018 decision).

4. The magistrate finding that plaintiff should receive a judgment for $216,450 is an abuse of discretion and not supported by [the former magistrate's February 12, 2004 decision].

5. In sentence two of paragraph 3 on page 6 of her decision, the magistrate incorrectly states what happened on August 2, 2005, when [the former magistrate] filed his findings of fact and conclusions of law [in February 2004].

6. The magistrate, on page 7, paragraph 3, has incorrectly stated Ms. Taylor's age.

7. The magistrate refused to allow Mr. Heary to take Ms. Taylor's deposition.

8. On page 8, the magistrate incorrectly states that Mr. Heary pays $97 per month for health insurance.

9. The magistrate in her decision on page 7, last paragraph, sentence 2 mis[s]tates Mr. Heary's income.

10. The magistrate wrongfully characterizes the extent of Mr. Heary's medical conditions and what was filed on page 9, paragraph 6.

11. The magistrate erred by allowing the plaintiff to continue to garnish Mr. Heary's social security after defendant filed his motion to modify in October 2016.

{¶ 2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

**{¶ 3}** Heary was divorced from his wife, plaintiff-appellee Donna M. Taylor, pursuant to a judgment entry of divorce journalized on July 23, 1999. Taylor was diagnosed with chronic progressive multiple sclerosis in October 1985, and, at the time of the parties' divorce, Taylor was totally disabled. (Magistrate's decision dated Sept. 19, 1998 at p. 13, incorporated into judgment entry of divorce.) Due to the progressive nature of Taylor's disease, the judgment entry of divorce ordered that

> [Heary] shall pay for and maintain [Taylor] as a beneficiary of the John Hancock Long Term Insurance Trust until [Taylor's] death or remarriage, and provide annual proof to [Taylor] of his compliance with this obligation.

(Judgment entry of divorce at p. 7.)

**{¶ 4}** In February 2016, Taylor's condition had worsened to the point that she could no longer independently care for herself, and she was admitted into an assisted living facility operated by Americare Assisted Living, Inc. Taylor's daughter, Andrea Heary, who serves as Taylor's power of attorney, contacted John Hancock Financial Services to obtain benefits under the long-term care policy referenced in the judgment entry of divorce. A John Hancock representative informed her that the premiums had not been paid since January 2003, and that the coverage terminated when the account became overdue.

**{¶ 5}** The J0hn Hancock insurance policy included a "paid-up" benefit provision that allowed Taylor to maintain coverage, but at a reduced level. The reduced "paid-up" coverage provided a daily maximum benefit of nursing home care

of $54.00 and a lifetime maximum benefit of $98,550. The benefit amount was determined by the amount of premiums paid as of February 1, 2003. (John Hancock letter dated June 23, 2016, attached to motion to show cause.) If the policy had not lapsed, full coverage would have provided $170 per day for nursing home care or $85 per day for home health care and a maximum lifetime limit of $315,000. (Pre-reduction benefits summary authenticated by affidavit of the records custodian of John Hancock Financial Services submitted with trial exhibits.) The difference between full coverage and reduced coverage is $216,450 in maximum lifetime benefits.

{¶ 6} In October 2016, Taylor filed a motion to show cause against Heary, alleging that he failed to pay premiums for long-term care insurance as required by the judgment entry of divorce. One month later, in November 2016, Heary filed a motion to modify spousal support and a response to Taylor's motion to show cause, alleging, among other things, that his "multiple debilitating health conditions" and his debt relieved him of his spousal support obligation. In November 2016, Heary was still obliged to pay monthly spousal support in the amount of $945 as ordered by the judgment entry of divorce and modified by a subsequent order dated August 2, 2005.

{¶ 7} Taylor lives in Deltona, Florida, and Heary lives in Apollo, Pennsylvania. Taylor, through counsel, asked the court for permission to appear for trial via teleconferencing due to her disability. Heary, pro se, also filed a motion to participate at trial by phone, claiming he was physically unable to appear in person

and that he could not afford to spend three days in Cleveland for a trial. The court informed the parties that it lacked the technological capabilities to connect two parties from different remote locations via teleconferencing. Therefore, the parties agreed the hearing would be based on exhibits submitted by each party as well as the parties' pending motions and written closing arguments. The court accepted the evidentiary exhibits submitted by the parties into evidence.

{¶ 8}   Heary did not dispute that he stopped paying the long-term care insurance premium in 2003. He argued that the magistrate's decision filed in February 2004, which was adopted by the court on August 2, 2005, granted the motion to modify spousal support he filed on May 15, 2002, and thereby terminated his ongoing obligation to pay the long-term care insurance premiums. Indeed, the court's August 2005 judgment entry granted the motion to modify spousal support.

{¶ 9}   In his May 15, 2002 motion to modify, Heary had argued that his spousal support obligation should be reduced because he lost his job, declared bankruptcy, and "was paying LTD insurance for his former spouse—Donna Taylor from the remaining 35% of the salary he did receive." While the motion was pending, Heary was injured in a motor vehicle accident on September 18, 2002. Based on a change in circumstances, the court reduced his spousal support obligation as follows:

> [Heary's] Motion to Modify Support Post Decree (#101166) is hereby granted and effective May 15th, 2002, the spousal support obligations shall be $1,800.00 per month and effective September 18th, 2002, the spousal support obligation shall be $945.50 per month, until either

party's death or Plaintiff's remarriage, subject to further order of the Court.

(Judgment entry dated August 2, 2005.) Neither the magistrate's decision dated February 12, 2004, nor the court's decision dated August 2, 2005, mentioned Heary's obligation to pay premiums for long-term care insurance.

{¶ 10} In Heary's November 2016 motion to modify spousal support, Heary argued that the monthly social security benefit he receives for his disability minus the amount of his monthly spousal support obligation was insufficient to cover his living expenses and the cost of caring for the minor children he now has from another marriage that ended in divorce. In support of his claims, Heary provided a medical expense report, which showed unreimbursed medical expenses in the amount of $18,552.04 between March 31, 2017 and March 7, 2018. However, he did not provide any receipts or explanations of benefits to support the medical expense report. The medical expense report was also not authenticated in any fashion.

{¶ 11} Based on the record and the evidence submitted by the parties, a magistrate issued a decision finding that Heary failed to comply with the terms of the judgment entry of divorce when he stopped paying premiums for Taylor's long-term disability insurance. The magistrate determined that Taylor should receive a judgment against Heary in the amount of $216,450, which represents the difference between the reduced "paid up" level coverage and the full extent of coverage under the John Hancock policy. In reaching this conclusion, the magistrate explained:

> The Magistrate finds that the long term care provision was not defined as additional spousal support in the Magistrate's Decision filed

September 25, 1998. The provision was a standalone provision in the Decision, as well as the Judgment Entry of Divorce. The Magistrate further finds that the Motion to Modify Support filed by Mr. Heary on May 15, 2002 * * * is silent as to the payment of the long-term care insurance premiums. * * * The Magistrate's Decision upon which Mr. Heary is basing his claim is silent as to the provision, as is the Judgment Entry arising from that Magistrate's Decision. The Magistrate finds that Mr. Heary has failed to present evidence to support his claim that his obligation to pay the long term disability insurance was terminated by the February 2004 Magistrate's Decision. The issue of modifying and/or terminating that provision was not even before the Court, other than as a reason to reduce the monthly spousal support order he was paying.

Mr. Heary presented no evidence as a defense to failing to pay the claim [premiums] after January 2003. His monthly spousal support obligation was not modified until August 2, 2005[,] more than two and half years after [he] stopped paying the premium. The monthly premium was only $28.10 per month.

(Magistrate's decision dated June 18, 2018.)

{¶ 12} The magistrate nonetheless granted Heary's motion to modify spousal support and reduced the obligation to $724 per month. The magistrate found that Taylor's recent receipt of social security benefits due to her age constituted a change in circumstances that warranted a reduction in spousal support. Although Heary also receives social security disability benefits, the magistrate concluded that those benefits were not a change of circumstances because the prior support order was based on, and reduced because of, his disability. The magistrate further observed that Heary's medical expenses could not be considered a change of circumstances because he "provided no independent supporting documents to substantiate his claims." (Magistrate's decision dated June 18, 2018.)

{¶ 13} Both parties filed objections to the magistrate's decision. After considering the evidence and the magistrate's decision, the trial court overruled the parties' objections and adopted the magistrate's decision without modification. Heary now appeals the trial court's judgment.

## II. Law and Analysis

### A. Standard of Review

{¶ 14} A trial court has broad discretion in contempt proceedings. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991). We, therefore, will not reverse a trial court's decision to hold a party in contempt absent a showing of an abuse of discretion. *Id.* An abuse of discretion is evident where the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

### B. Motion to Show Cause

{¶ 15} In the first five assignments of error, Heary argues the trial court erred by finding him in contempt of court for failing to pay premiums for Taylor's long-term care insurance and ordering him to pay Taylor $215,450. He contends the trial court erroneously concluded that he was required to continue paying the premiums because the magistrate's decision, dated February 12, 2004, which modified his original spousal support obligation, eliminated the order requiring him to pay the premiums. He further argues the magistrate's finding that "Mr. Heary presented no evidence as a defense to failing to pay the [premiums] after January 2003" is not supported by the record.

**{¶ 16}** It is undisputed that the judgment entry of divorce required Heary "to pay for and maintain [Taylor] as a beneficiary of the John Hancock Long Terms Insurance Trust until [Taylor's] death or remarriage * * *." (Judgment entry of divorce at p. 7.) Heary contends he was relieved of this obligation when the magistrate determined, in February 2004, that his spousal support obligation should be reduced due to a change of circumstances.[1]

**{¶ 17}** However, Heary stopped paying the premiums in January 2003, over a year before the magistrate issued its decision reducing his spousal support obligation in February 2004. Although the magistrate's February 2004 decision reduced Heary's spousal support obligation, it did not modify the order requiring Heary to pay premiums for Taylor's long-term care insurance. As the magistrate accurately observed in her June 18, 2018 decision, the order to pay long-term care insurance premiums was a "stand-alone provision," meaning it was not tied to Heary's spousal support obligation and, therefore, was not changed by any modification of spousal support. The issue of Taylor's long-term care insurance was never before the court in 2004 and 2005, because Heary did not request a modification of this obligation in his motion to modify spousal support. Despite the fact that Heary was never relieved of his responsibility to pay premiums for Taylor's long-term care insurance, he admitted that he stopped paying the premiums in

---

[1] Heary filed the motion to modify on May 15, 2002, and a magistrate presided over hearings on the motion in June and November 2003. The magistrate issued a decision on February 12, 2004, which was adopted by the trial court without modification on August 2, 2005.

January 2003.  Therefore, the trial court properly found him in contempt for failing to pay the premiums.

{¶ 18} Taylor submitted verified evidence from John Hancock Financial Services indicating that if Heary had continued paying the premiums, which cost $28.10 per month, Taylor would have been entitled to a maximum lifetime limit of coverage in the amount of $315,000.  However, because Heary stopped paying the premiums in January 2003, Taylor was only entitled to "paid up" benefits in the amount of $98,550.  The difference between full coverage and reduced coverage is $216,450 in maximum lifetime benefits.  Therefore, there was competent, credible evidence to support the court's finding that Heary was obligated to pay Taylor $216,450 as a consequence of violating the divorce decree.

{¶ 19} Therefore, the first five assignments of error are overruled.

### C. Discovery

{¶ 20} In the seventh assignment of error, Heary argues the trial court erred in refusing to allow him to take Taylor's deposition.  He contends her deposition would have established that she has sufficient assets with which to support herself.

{¶ 21} In December 2017, Heary emailed Taylor's lawyers requesting dates when Taylor would be available for deposition.  The parties eventually agreed that the deposition would take place on January 22, 2018.  Taylor's lawyers explained that Taylor's deposition would have to take place at her residence due to her physical infirmities, and Heary indicated to counsel that he would take Taylor's deposition at her residence.  (See affidavit of Megan Spagnolo Lai at ¶ 7, attached to plaintiff's

motion for protective order filed Jan. 10, 2018, hereinafter referred to as "Lai aff.") Even though the parties agreed that Taylor's deposition would take place at her residence, Taylor notified counsel that he scheduled the deposition to take place at the office of Associated Court Reporters. (Lai aff. at ¶ 8.) When counsel reminded Heary that Taylor would be unable to attend a deposition at the court reporter's office, he replied that the court reporter "[was] not going to accommodate her." (Lai aff. at ¶ 10.)

{¶ 22} Taylor's counsel subsequently filed a motion for protective order, arguing that "Heary's true motive is to harass Plaintiff and to impose an undue burden on her." (Plaintiff's motion for protective order filed Jan. 10, 2018.) Counsel also argued that due to Taylor's infirmities, she should not be forced to travel in order to attend a deposition for Heary's benefit while Heary questions her from the comfort of his home. Heary claimed he was unable to travel outside his home for the deposition due to his own physical infirmities. The trial court granted Taylor's request for a protective order and ruled that neither party would be permitted to take the deposition of the other party.

{¶ 23} Civ.R. 26(C) governs the issuance of protective orders and permits a trial court, for good cause shown, to grant a protective order to protect a party. The order can mandate that the requested discovery not be had or can order that certain discovery only take place on specified terms, and/or that discovery be limited to only certain matters. *Id.*

**{¶ 24}** A trial court enjoys broad discretion in the regulation of discovery proceedings. *Juergens v. House of Larose, Inc.*, 8th Dist. Cuyahoga No. 106972, 2019-Ohio-94, ¶ 51. In exercising its discretion, the trial court "'balances the relevancy of the discovery request, the requesting party's need for the discovery, and the hardship upon the party from whom the discovery is requested.'" *Abdelshahid v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 102109, 2015-Ohio-2274, ¶ 10, quoting *Stegawski v. Cleveland Anesthesia Group, Inc.*, 37 Ohio App.3d 78, 85, 523 N.E.2d 902 (8th Dist.1987).

**{¶ 25}** An appellate court will reverse a trial court's decision limiting a party's right to discovery only "if such a decision is improvident and affects the discovering party's substantial rights." *Kaufman v. Young*, 8th Dist. Cuyahoga No. 105761, 2017-Ohio-9179, ¶ 42, citing *Bellinger v. Weight Watchers Gourmet Food Co.*, 142 Ohio App.3d 708, 717, 756 N.E.2d 1251 (5th Dist.2001).

**{¶ 26}** Heary could have obtained Taylor's deposition if he had agreed to take it at her residence. Taylor's request that the deposition take place at her residence was reasonable due to her debilitating condition, and Heary made no effort to accommodate her. Therefore, the trial court acted within its discretion when it precluded Heary from taking her deposition. The protective order was fair since it prohibited both parties from taking the other party's deposition, and the parties were able to obtain discovery by propounding interrogatories and requests for production of documents on each other. We find no abuse of discretion under these circumstances.

{¶ 27} The seventh assignment of error is overruled.

### D. Motion to Modify Spousal Support

{¶ 28} In the sixth assignment of error, Heary argues the magistrate incorrectly stated Taylor's age. In the eighth assignment of error, Heary asserts that the trial court incorrectly stated in the magistrate's decision that he pays $97 per month for health insurance when he actually pays $297 per month. Heary argues in the ninth assignment of error that the magistrate inaccurately stated his income. In the tenth assignment of error, Heary argues the magistrate mischaracterized the extent of his medical conditions. And in the eleventh assignment of error, he argues the magistrate erred by allowing Taylor to continue to garnish his social security benefits after he filed his motion to modify spousal support in October 2016. We discuss these assigned errors together because they all relate to the propriety of the trial court's decision to modify spousal support.

{¶ 29} A trial court lacks jurisdiction to modify a spousal support order unless the court expressly retained jurisdiction to make the modification. *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, paragraph two of the syllabus; R.C. 3105.18(F). If the court retained jurisdiction for modification in the judgment entry of divorce, the trial court must consider the factors set forth in R.C. 3105.18(C)(1) to determine whether the existing support order should be modified due to a significant change in circumstances. *Mandelbaum* at ¶ 31. As relevant here, R.C. 3105.18(C)(1) states that the trial court should consider (1) the parties' income from all sources, including income derived

from the property division made by the court; (2) the relative earning abilities of the parties; (3) the parties' ages and physical, mental, and emotional conditions; (4) the parties' retirement benefits; (5) the relative assets and liabilities of the parties; and (6) any other factor that the court finds to be relevant and equitable. *See* R.C. 3105.18(C)(1).

{¶ 30} The party seeking the modification of spousal support has the burden of establishing that a modification is warranted. *Brzozowski v. Brzozowski*, 8th Dist. Cuyahoga No. 101013, 2014-Ohio-4820, ¶ 20. A modification is warranted if the movant demonstrates (1) a substantial change in circumstances that makes the existing award no longer reasonable, and (2) "[t]he change in circumstances was not taken into account by the parties or the court as a basis for the existing award when it was established or last modified[.]" R.C. 3105.18(F)(1)(b).

{¶ 31} As previously stated, the trial court reduced Heary's spousal support obligation from $3,060 per month to $945.50 per month in August 2005. In his recent motion to modify spousal support, filed in November 2015, Heary argued his spousal support obligation should be terminated because (1) he needs the full amount of his social security benefits to cover the costs of his medical bills, and (2) Taylor no longer needs spousal support now that she receives her own social security benefits.

{¶ 32} As Heary asserts, Taylor was 66 years old at the time the magistrate issued her decision rather than 64 years old as noted by the magistrate. However, her age is only relevant for purposes of social security benefits since her physical

disability makes it impossible for her to earn an income. Taylor is legally blind and confined to a wheelchair. Therefore, the magistrate's mistake regarding Taylor's age is of no consequence. Heary was 65 years old at the time the magistrate issued her decision. But since Heary is disabled, his age is not a significant factor. Thus, other factors, such as the relative assets and liabilities of the parties, the parties' physical conditions, and the parties' retirement benefits are more significant factors than the parties' ages.

{¶ 33} The evidence showed that Heary receives social security benefits in the amount of $30,204 annually and receives child support from his second wife in the amount of $33,024 annually. Heary also receives a derivative benefit from social security for his two minor children. Heary has custody of the children 50 percent of the time. Despite his disability, Heary worked as a visiting professor at the University of Pittsburgh in 2007, but no evidence was presented as to the income he received from that employment. Nor was there evidence that Heary receives any retirement benefit other than social security.

{¶ 34} According to court documents filed in Heary's divorce case from his second wife in 2015, Heary owned his home, two cars, a motorcycle, a camper, and a boat. Heary purchased an Audi S Wagon for approximately $40,000 in December 2014. Heary still owns his home, which he purchased in 2008 for $279,000. However, in response to interrogatories, Heary indicated that the fair market value of his house was $240,000 and that he owed $245,000 on the mortgage. No

evidence was presented as to whether Heary still owns a second car, the camper, the motorcycle, or the boat, nor was there any evidence as to the value of those assets.

{¶ 35} Taylor owns a home a Florida with a monthly mortgage payment of $736.17. No evidence was presented as to the value of Taylor's house, but Taylor intends to sell the house as soon as practicable. There is no evidence that Taylor owns a car, and there was no evidence that she has any expenses associated with owning a car.

{¶ 36} Taylor was not employed at the time of the divorce, and there is no evidence that she has been employed since she moved to Florida at the time of the divorce. In 2016, Taylor received a lump sum payment in the amount of $42,151.65 for spousal and child support arrearages as the result of an intercept on funds Heary was receiving from Traveler's Insurance Company for underinsured motorist coverage resulting from a 2015 automobile accident.

{¶ 37} Taylor's only taxable income in 2014, 2015, and 2016 was the spousal support she received. Evidence presented in support of Heary's motion to modify custody showed that Taylor received spousal support in the amount of $11,346 ($945.50 x 12 months) annually. She started receiving social security benefits in 2017, in the amount of $12,828, and receives $19,440 from the John Hancock long-term care insurance policy.

{¶ 38} John Hancock assessed Taylor prior to approving benefits under the long-term care policy. The assessment revealed that she needs assistance with daily activities such as dressing, toileting, sitting, standing and feeding herself. John

Hancock approved her claim for long-term care benefits based on its assessment of Taylor's disability.

{¶ 39} In March 2016, Taylor became a resident of an assisted living facility, which costs $2,325 per month. Under the reduced level of coverage, John Hancock reimburses her $1,620 per month. Thus, Taylor pays $705 out of pocket each month for long term care. Had the policy not lapsed, she would have received approximately $5,000 month in coverage and would have had no out-of-pocket expense. Evidence showed that the maximum lifetime benefits under the John Hancock policy will be depleted in 2021, at which point the entire cost of Taylor's care will be an out-of-pocket expense.

{¶ 40} As previously stated, Heary argued his spousal support obligation should be terminated, in part, because he needs the full amount of his social security benefits to cover the costs of his medical bills. However, the spousal support order requiring him to pay Taylor $945.50 per month was based on his award of social security disability benefits in 2002. Indeed, the court's prior order, dated August 2, 2005, reducing the amount of spousal support from $3,060 per month to $945.50 per month, was based on injuries Heary sustained in his 2002 motorcycle accident, which resulted in Heary's disability. Therefore, the medical conditions he sustained as a result of that accident were contemplated when the spousal support order was last modified. In other words, Heary's disability is not a change of circumstances that warrants a modification of spousal support.

{¶ 41} Nevertheless, Heary contends he now has substantial out-of-pocket medical expenses that make it impossible for him to continue paying spousal support. However, he provided no independent documents or other evidence to substantiate the amount of his medical expenses. Although there is some evidence that Heary was involved in a motor vehicle accident in 2015, he failed to provide any competent, credible evidence establishing that his medical expenses constituted a change in circumstances that would warrant a modification of spousal support.

{¶ 42} Heary argues that Taylor failed to report the lump-sum payment in the amount of $42,000 that she received for spousal support arrearages in 2016. He claims these funds, which were paid by Traveler's Insurance Company as underinsured motorist coverage, were intended to cover the cost of his medical bills. However, as previously stated, he failed to present verified evidence of any medical bills. Moreover, the funds were intercepted pursuant to R.C. 3121.037(A)(11) because Heary owed an arrearage of spousal and child support to Taylor that exceeded that amount. Since Heary owed these funds to Taylor for years before he requested a modification of spousal support, the lump-sum payment was not a change of circumstances warranting a reduction in spousal support.

{¶ 43} However, Taylor's recent eligibility for social security payments is a change of circumstances that warrants a reduction in spousal support. The evidence shows that in 2017, Taylor became eligible to receive social security benefits and that she was receiving $12,828 per year in social security payments in 2017. This is a substantial change in circumstances that warranted a reduction in spousal support.

{¶ 44} The trial court reduced Taylor's spousal support from $945.50 per month to $724 based solely on Taylor's receipt of social security benefits. The reduction might have been greater, but for the fact that Heary failed to continue paying the monthly premium at the rate of $28.10 per month for Taylor's long-term care insurance. As previously stated, the reduced "paid-up" benefits will provide Taylor with coverage in the amount of $19,710 annually over five years. Had Heary continued to pay the premiums as required by the divorce decree, Taylor would be receiving $63,000 annually over five years.

{¶ 45} The $19,710 Taylor receives is not sufficient to cover the cost of living in an assisted living facility. The monthly cost of living in the assisted living facility is $2,325, but Taylor only receives $1,642.50 per month from the long-term disability insurance. Consequently, Taylor is solely responsible for the remaining $682.50 per month. As the magistrate observed in her June 18, 2018 decision:

> [E]ach month that Ms. Taylor has to pay out of pocket for the assisted living facility[,] Ms. Taylor is dissipating funds that could be saved to assist her in paying for the assisted living or nursing home care as is needed beyond the five years that the long term disability insurance will cover.

{¶ 46} Therefore, Taylor's receipt of long-term care insurance benefits, at the significantly reduced rate, is not a change in circumstances that would warrant an additional reduction in spousal support. Moreover, the fact that Taylor will have insufficient funds to cover the cost of her long-term care is Heary's fault. Therefore, the court's decision to reduce, but not eliminate spousal support, was reasonable under the circumstances and was not an abuse of discretion.

**{¶ 47}** The sixth, eighth, ninth, tenth, and eleventh assignments of error are overruled.

**{¶ 48}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., and
LARRY A. JONES, SR., J., CONCUR